Lonzie CARR

v.

TRUSTEES OF the HOTEL & RESTAURANT EMPLOYEES AND BARTENDERS INTERNATIONAL UNION PENSION FUND.

Civ. A. No. 81–3944.

United States District Court,
E.D. Pennsylvania.

April 6, 1984.

Alan F. Markovitz, Trevose, Pa., for plaintiff.

Bruce E. Endy, Meranze, Katz, Spear & Wilderman, Philadelphia, Pa., for defendants.

## MEMORANDUM OF DECISION

SHAPIRO, District Judge.

### I. INTRODUCTION

This action was brought under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to recover benefits due plaintiff from the Hotel & Restaurant Employees and Bartenders International Union Pension Fund ("Fund"). Jurisdiction was based on 28 U.S.C. § 1331. Upon the death of the plaintiff in 1982, the parties stipulated to substitution of Caroline Carr as a plaintiff both in a representative capacity on behalf of her late husband and in her own right. The issue is whether plaintiff is entitled to credit for service prior to employer contributions to the Fund on his behalf. By stipulation the evidentiary record in this case consists of stipulated facts and the deposition of plaintiff Lonzie Carr. Following a non-jury trial on that record, the court finds in favor of plaintiff.

### II. FACTS

Local 111, Chefs, Cooks, Pastry Cooks and Assistants Union (Local 111), affiliat-

ed with the Hotel & Restaurant Employees and Bartenders International Union AFL–CIO, is a labor organization within the meaning of Section 2(3) of the National Labor Relations Act (Stipulation Nos. 1, 3 and 4). Mr. Carr was a union member and an employee of the Ambassador Restaurant from at least January 1, 1954 until the restaurant closed on September 30, 1975. Mr. Carr was later employed at Pop Edwards Restaurant until some time in 1977.[1] (Carr Deposition at 9–10).

On or about October 1, 1967, the Local 111 Pension Trust Fund was established with an employer association to provide pension benefits for participants in the Fund. (Stipulation No. 6). The Local 111 Pension Fund was merged on July 9, 1975 with the Hotel & Restaurant Employees and Bartenders International Union Pension Plan (Stipulation No. 7). The pension fund is financed by contributions from employers according to the terms of collective bargaining agreements. Employees of contributing employers become eligible for benefits according to the terms of the Plan.

Local 111 had a collective bargaining agreement with the Ambassador Restaurant since at least 1964. (Stipulation No. 5). The Union and the Restaurant entered into an agreement dated September 28, 1970 that required, *inter alia*, the Restaurant to pay contributions to the pension fund for an employee (William Thompson) from October 1, 1970 and for all other employees from July, 1971 (Exhibit D to Stipulation).

Mr. Carr applied for a disability pension on March 26, 1978 (Stipulation No. 14). The application was denied for lack of adequate years of credited service necessary to qualify for benefits under the pension plan (Exhibit XX to Stipulation). The Fund records show no employer contributions for Mr. Carr for the period from the inception of the Fund on October 1, 1967 until September 1, 1971. (Stipulation No. 13). In denying Mr. Carr's claim, the administrator

determined that because no contributions were made for Mr. Carr for two years subsequent to 1967, he incurred a break in service in 1969 that lost him credit for all service accrued through September, 1967, so that he had less than the required number of years for eligibility. The Appeals Committee affirmed this determination and also found insufficient evidence that the Ambassador Restaurant, Mr. Carr's employer for the disputed period, had a contractual obligation to make pension contributions prior to 1971. Defendants admit that Mr. Carr complied with all procedural steps, including exhaustion of internal administrative remedies, and that he would have been entitled to benefits but for the lack of employer contributions from 1967–71 and the consequent alleged break in service (Stipulation Nos. 13, 15).

## III. DISCUSSION

■ Plaintiff brought this suit pursuant to 29 U.S.C. § 1132(a)(1)(B) which provides:

(a) A civil action may be brought—

(1) by a participant or beneficiary—

(A) ...

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan ....

The issue is whether plaintiff's decedent was eligible for benefits when he applied for a disability pension in 1978.

The plaintiff has the burden of showing that the challenged action or decision was arbitrary and capricious. *Music v. Western Teamsters Pension Fund,* 712 F.2d 413, 419 (9th Cir.1983). As stated in *Rosen v. Hotel and Restaurant Employees & Bartenders Union, Etc.,* 637 F.2d 592, 596 (3d Cir.), *cert. denied,* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981):

Although this is a limited standard of review it 'leads neither to abdication of traditional judicial control of fiduciaries nor to excessive judicial intervention in

---

**1.** The exact period of Mr. Carr's employment at Pop Edwards was in dispute but the issue is whether Mr. Carr was entitled to credited service for hours worked for the Ambassador Restaurant prior to 1971. (*See,* Ex. XX to Stipulation).

trust operations, in harmony with federal labor policy.' *Rehmar v. Smith*, 555 F.2d 1362, 1371 (9th Cir.1976).

 Two statements of the Plan are relevant to the determination of eligibility: the "1974 Plan," effective October 1, 1967 with amendments to January 1, 1974 (Exhibit B to Stipulation); and the "1976 Plan," effective October 1, 1976 (Exhibit C to Stipulation), which was in force when Mr. Carr applied for benefits. Defendants assert, and the plaintiff does not dispute, that the 1976 Plan determines Mr. Carr's eligibility; it provides that a participant is eligible for a disability pension, "if his employment is terminated by reason of Disability after age 50, but before age 62, and after he has completed 15 or more years of Credited Service." *Id.* at § 5.3. Section 4.3 of the 1976 Plan states in part:

> Credited Service prior to January 1, 1976, for a Participant included under the prior provisions of the Plan, shall be determined under the prior provisions of the Plan.

(Exhibit C to Stipulation). Mr. Carr was a participant under the 1974 Plan so credited service prior to January 1, 1970 is determined for him by that plan which states:

> Section 9. ... For periods on and after the effective date of this Pension Plan an employee will be credited with one (1) year of credited service for each 1,600 hours of work for which contributions are submitted on his behalf.... For periods of time prior to the effective date of this Pension Plan an employee will be credited with one (1) year of credited service for each uninterrupted year in which he has been a member of the Union in good standing from his most recent initiation date or readmission date.

(Exhibit B to Stipulation). Under Section 7, the effective date means October 1, 1967.

Defendants contend Mr. Carr incurred a break in service which negated any past service credit under the 1974 Plan. Under Section 10 a break in continuous service means:

> (a) An employee who fails to earn at least one-half (½) year of credited service in any two consecutive plan years ... shall lose his accumulated credited service.

Mr. Carr's employer failed to contribute to the Fund prior to 1971; defendants claim this lack of contribution from the effective date in 1967 resulted in a break of service as of 1969. (Letter of March 22, 1979 from H. Leavitt, Chairman of the Fund Legal Committee, to Carr). As a result, defendants claim Mr. Carr had earned only 4.25 years of credited service when he applied for a pension. (Defendants' Proposed Findings of Fact and Conclusions of Law, No. 38).

Defendants' reading of Section 10 is not consistent with the other provisions of the Plan.[2] The operative phrases of this section are "employee" and "any two consecutive plan years." The second phrase is clear in meaning—*any* two years; it does not state "since the effective date of the Plan." Further, this phrase is inextricably tied with the first phrase, "employee." Section 6 of the Plan defines "Employee" as:

> [A]ny person in the employ of an Employer and who is included in the collective bargaining unit represented by the Local Union and for whom contributions to the Fund are made.

Section 5 of the Plan defines "Employer" as:

> [A]ny person, firm, association, partnership, or corporation contributing to the Local 111 Pension Trust Fund as required by a collective bargaining agreement between such Employer and the Local Union, including the Local Union as an Employer.

---

2. Defendants suggest that a booklet included in Exhibit B which describes the Plan supports their interpretation of the break in service provision. However, it is the language of the Plan itself, not a summary of it, which controls. The booklet expressly states, "[i]f it is considered that this booklet differs from the Plan, the Plan shall govern." (Exhibit B to Stipulation, Second Page Unnumbered).

Therefore, under Section 10 Mr. Carr became an "Employee" when his employer contributed to the Fund on his behalf; this occurred no earlier than 1971 when defendants concede the Ambassador Restaurant first became obligated to make contributions on his behalf under the terms of the collective bargaining agreement. To determine whether there was a break in service, one must look to the period of time commencing in 1971 that Mr. Carr was an "Employee" under the Plan. No break in service occurred for Mr. Carr from 1971 to the date of application in 1978. Under the terms of the Plan itself, Mr. Carr incurred no break in service. He is entitled to all accumulated past service earned prior to 1971.

Under Section 9 of the 1974 Plan, a participant receives one year of credited service for each uninterrupted year of membership in the Union prior to the effective date of the Plan. Mr. Carr was a member of Local 111 continuously from January 1, 1954. Under the terms of the Plan itself, Mr. Carr should have received past service credit for the period from January 1, 1954 to October 1, 1967 (the effective date of the 1974 Plan) or 13.75 years. This past service credit of 13.75 years plus Mr. Carr's credited years of 4.25 for which contributions were made beginning in 1971 total 18 credited years of service; that is more than the minimum 15 years required for pension benefit eligibility.

The 1974 and 1976 plans manifest an intention to make union members participants as their respective employers agree to contribute to the Fund; newly-included members are given credit for years as union members prior to the effective date of the 1974 Plan; thereafter, credit is given only for years for which contributions have been made. This is evident from the language of both the 1974 Plan and the 1976 Plan. The date in which an employer participated as a contributor to the Fund is the operative event for calculating past and future credited service for union members.

Defendants' erroneous interpretation of the break in service rules is based on Mr. Carr's being an "Employee" under the Plan as of October 1, 1967 when a plan was instituted even though his employer joined it in 1971. The Ambassador Restaurant was not required to contribute to the Fund until 1971. If the Restaurant as Mr. Carr's employer failed to meet an obligation under a collective bargaining agreement and its failure to contribute after 1967 jeopardized Mr. Carr's participation in the Fund, defendants, as fiduciaries of the participants in the Fund, had an obligation to inform Mr. Carr of his employer's failure to contribute. *Rosen, supra* at 599–601.[3] Defendants' failure to fulfill their fiduciary obligations would have rendered them liable for any benefits Mr. Carr lost. *Rosen, supra* at 601. Since defendants concede the Ambassador Restaurant first became obligated to pay into the Fund on Mr. Carr's behalf in 1971, it was not obligated to pay from 1967 to 1969; to declare a service break in 1969 was contrary to the plain language of the plans.

■ Whether the trustees' decision to deny benefits was in fact arbitrary and capricious depends on "a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). Factors relevant to whether trustees of a pension plan acted arbitrarily and capriciously include: 1) uniformity of construction of the plan; 2) interpretation of the plan contrary to its terms; 3) fair interpretation and the reasonableness of the interpretation; and 4) unanticipated costs. *Dennard v. Richards Group, Inc.*, 681 F.2d 306, 314 (5th Cir.1982).

■ "When the trustee's interpretation of a plan is in direct conflict with express language in a plan, this action is a very strong indication of arbitrary and capricious behavior." *Dennard, supra; accord, Miles v. New York State Teamsters Conference, Etc.*, 698 F.2d 593, 599 (2d Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct.

---

**3.** "This duty has roots at common law." *Rosen, supra* at 600.

105, 78 L.Ed.2d 108 (1983) ("Where the trustees of a plan ... interpret the plan in a manner inconsistent with its plain words ... their actions may well be found to be arbitrary and capricious.") *Morgan v. Mullins*, 643 F.2d 1320, 1324 (8th Cir.1981) ("[T]he Trustees acted arbitrarily and capriciously in interpreting [the plan] in a way which is inconsistent with the plain words in the document....").

"The fact that a trustee's interpretation is not the correct one as determined by a District Court does not establish in itself arbitrary and capricious action, but is a factor in that determination." *Dennard, supra* at 314. Once the plaintiff shows "that the eligibility requirement under consideration is unreasonable or is 'arbitrary and capricious' ... the burden shifts to the trustees ... to come forward with evidence establishing the reasonableness of the eligibility requirement, based on the purposes of the fund." *Music, supra* at 419 (citation omitted). While evidence of uniformity of application or unanticipated costs would not in and of themselves negate the indication of arbitrary and capricious action, no such evidence was offered by the trustees. Therefore, defendants' interpretation, in direct conflict with the plain language of the Plans, is arbitrary and capricious.

Mr. Carr was entitled to past service credit for years as a union member prior to 1967 and was entitled to a disability pension when he applied on March 26, 1978. Plaintiff Mrs. Carr, as representative of the Estate of Mr. Carr, is entitled to disability pension payments of $60.34 per month, for the period March 28, 1978 until Mr. Carr's death, December 29, 1982. Mrs. Carr is also entitled in her own capacity to the pension payments thereafter as the survivor under the Joint and Survivor Pension benefits to which Mr. Carr was entitled.

In accordance with Rule 52(a) of the Federal Rules of Civil Procedure, this Memorandum of Decision constitutes the court's Findings of Fact and Conclusions of Law.

### JUDGMENT

AND NOW, this 6th day of April, 1984, it is ORDERED that:

Judgment is entered in favor of plaintiff, Caroline Carr in her representative capacity, in the amount of $3,420 (Disability pension benefits of $60.34 per month due under the pension plan for the period March 28, 1978 until December 29, 1982, the date of Mr. Carr's death) and, in her individual capacity, joint and survivor disability pension benefits thereafter.