**Thomas J. RICCIARDI, Plaintiff,**

v.

**RICCIARDI PROFIT SHARING PLAN, Defendant.**

Civ. A. No. 85–2055.

United States District Court, D. New Jersey.

March 14, 1986.

As Amended May 29, 1986.

 

John N. Post, Irwin, Post & Rosen, Roseland, N.J., for plaintiff.

Michael T. Scaraggi, Oransky, Scaraggi & Borg, East Orange, N.J., for defendant.

STERN, District Judge.

Plaintiff Thomas J. Ricciardi instituted this suit to recover 55% of the value of his account in a pension plan known as the Ricciardi Profit Sharing Plan ("new plan"), which the trustees of the fund declared forfeit when he was fired in 1982. The 55% forfeiture amounts to $36,437.00. Plaintiff contends that the trustees' action was illegal under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1053(b)(1) (1985). Even if ERISA does not control, plaintiff further contends, the trustees' action was void as arbitrary and capricious. The new plan is the sole defendant. This matter comes before the Court on cross-motions for summary judgment. For the reasons that follow plaintiff's motion will be granted.

## FACTS

The Ricciardi Building & Construction Co., Inc., was started in the 1920's by plaintiff's father. Plaintiff and his brother Anthony joined the business in the 1940's. Their brother Rudolph joined in 1952. In 1955, the company was incorporated. Each of the three brothers was a one-third owner of stock and a director. Thomas, the oldest brother, became the President, Anthony became the Vice-president, and Rudolph became Secretary. After a history of conflicts among the brothers, Rudolph and Anthony fired Thomas in 1982. As a result, Thomas brought a suit in state court that ended in settlement but also in much bitterness. Thomas agreed to sell his part of the company to his brothers and to give up his positions in the company. The issue before the Court in the present action was explicitly excluded from the terms of that settlement.

The three brothers had been the trustees of the new plan. Anthony and Rudolph remain as trustees. After Thomas was

fired in 1982, Anthony and Rudolph ruled as trustees that Thomas forfeited 55% of his account in the new plan.

Prior to 1977, when the new plan was formed, the company had a pension plan known as the Ricciardi Building & Construction Co., Inc., Employees Retirement Plan ("old plan"). Since the company's unionized employees had yet another pension plan, neither the old nor the new plan ever had more than a handful of members including the three brothers. The old plan was a "defined benefit plan," while the new one is a profit-sharing "defined contribution plan."[1] When they were deposed, both Rudolph and Thomas agreed that the purpose of switching to the new plan was to give the three brothers more money relative to the few other members.

When the old plan ended in 1977, the only members were the three brothers plus an office employee named Mary Ferina. All four members elected to "roll over" his or her benefits into the new plan. These old plan funds were nonforfeitable under the terms of the new plan. However, the new plan provided that any member who terminated employment for any reason other than death, disability, or retirement at 65, would forfeit an amount from the account in accordance with the following schedule:

| Years of Participation | Non-forfeitable Percentage of Company Contribution Account to be Distributed |
| --- | --- |
| Less than 4 years | 0% |
| 4 years but less than 5 years | 40% |
| 5 " " " " 6 " | 45% |
| 6 years but less than 7 years | 50% |
| 7 " " " " 8 " | 60% |
| 8 " " " " 9 " | 70% |
| 9 " " " " 10 " | 80% |
| 10 " " " " 11 " | 90% |
| 11 " or more | 100% |

"Years of participation" is nowhere defined in the new plan. The meaning of this phrase is the sole issue in this case. If it means "years of participation in the new plan alone," the new plan trustees were correct to assess a 55% forfeiture, because Thomas had participated in the new plan for five years but less than six. Defendant urges this Court to adopt this interpretation. However, if the phrase means "participation in the new plan and any predecessor plan," as plaintiff argues, then Thomas should have gotten 100% of his account, instead of 45%, because he had 18 years of participation in the old and new plans together.

The accountants and lawyers who drew up and approved the new plan had played similar roles in connection with the old plan. They also approved the decision of the trustees of the new plan to impose the 55% forfeiture on Thomas.

This forfeiture enriched the remaining members of the new plan, especially Thomas' brothers, Anthony and Rudolph, because the new plan provided that forfeitures were to be divided *pro rata* among the remaining participants. Anthony and Rudolph split 90% of the $36,437.00 forfeited.

In May 1978, Mary Ferina's employment was terminated, leading to the only distribution of funds from the new plan prior to the one presently before this Court. Mary Ferina had been employed on a full-time basis since 1973. She had participated in the old plan for four years and in the new plan for one year. The trustees (the three brothers) granted her 45% of her new plan account and declared the rest forfeit. This means they gave her credit for her participation in both plans, since the 55% forfeiture indicates she was credited for five years of participation. The Ferina distribution was therefore based on an interpretation of "years of participation" different from the one applied when the trustees made the distribution to Thomas Ricciardi.

## DISCUSSION

■ It is uncontested that the new plan is regulated by ERISA, 29 U.S.C. §§ 1001 *et seq.* (1985). The first question for decision is whether the trustees' imposition of a 55% forfeiture in the distribution to Thomas Ricciardi violates any substantive

1. Definitions of these terms are found in 29 U.S.C. § 1002(34), (35) (1985).

provision of ERISA. Under ERISA, a pension plan must provide that an employee has a nonforfeitable right to a percentage of his accrued benefit derived from employer contributions, the particular percentage geared to years of service with the employer. 29 U.S.C. § 1053(a)(2) (1985). Accordingly, it is unlawful to predicate forfeitures on anything other than years of service with the firm. *Id.; see Buczynski v. General Motors Corp.*, 456 F.Supp. 867, 871 (D.N.J.1978). By itself, this would require that "years of participation" be interpreted as years of service with the firm, but the statute allows certain years of service to be disregarded:

(b) Computation of period of service

(1) In computing the period of service under the plan for purposes of determining the nonforfeitable percentage under subsection (a)(2) of this section, all of an employee's years of service with the employer or employers maintaining the plan shall be taken into account, except that the following may be disregarded:

(A) years of service before age 18, except that in the case of a plan which does not satisfy subparagraph (A) or (B) of subsection (a)(2) of this section, the plan may not disregard any such year of service during which the employee was a participant;

(B) years of service during a period for which the employee declined to contribute to a plan requiring employee contributions,

(C) years of service with an employer during any period for which the employer did not maintain the plan or a predecessor plan, defined by the Secretary of the Treasury.

29 U.S.C. § 1053(b)(1). The key exception is (C). This clearly enabled the trustees to disregard Thomas' years of service from 1964 to 1977.

■ The Secretary of the Treasury's definition of predecessor plan is:

(B) Definition of predecessor plan. For purposes of this section, if—

(1) An employer established a retirement plan (within the meaning of section 7476(d) ) qualified under subchapter D of chapter 1 of the Code within the 5-year period immediately preceding or following the date another such plan terminates, and

(2) The other plan is terminated during a plan year to which this section applies. The terminated plan is a predecessor plan with respect to such other plan.

Treas.Reg. § 1.411(a)–5(b)(3)(v)(B) (1985). The old plan meets this definition. The new plan is a retirement plan within the meaning of the Internal Revenue Code:

(c) Retirement plan.—For purposes of this section, the term "retirement plan" means—

(1) a pension, profit-sharing, or stock bonus plan described in section 401(a) or a trust which is part of such a plan, or

(2) an annuity plan described in section 403(a).

26 U.S.C. § 7476(c) (1985). The IRS ruled that the new plan is a qualified plan, and plaintiff has submitted proof of this. The new plan was established within five years of the termination of the old plan. And the old plan was "another such plan," since it was also a qualified retirement plan. Plaintiff submits proof of this.

Defendant seems to concede that this analysis is correct so far. Defendant disagrees with plaintiff only on when the old plan terminated. Plaintiff's view is that the old plan terminated on August 30, 1977, during the plan year that began on October 7, 1976. ERISA and the related Treasury Regulations applied to plan years commencing after December 31, 1975. 29 U.S.C. § 1061(b)(2) (1985); Treas.Reg. § 1.411(a)–2(b) (1985). Under this view, therefore, the final requirement is met, and the old plan is a "predecessor plan" of the new plan.

Defendant says, however, that the old plan terminated *effective* October 6, 1976, during the plan year that began on October 7, 1975. This would make the old plan not a "predecessor plan," because it did not terminate during a plan year to which

ERISA applies. The only evidence to support this view is evidence that when the new plan was formed, the trustees, including plaintiff, intended a termination date of October 6, 1976. The original intent of the trustees is meaningless, however, since the proposed date was illegal. ERISA established The Pension Benefit Guaranty Corporation (PBGC) within the Department of Labor to protect the accrued benefits of employees under pension plans. 29 U.S.C. § 1302(a) (1985). Since the old plan was terminated voluntarily, PBGC approval of the termination date was required under 29 U.S.C. § 1348(a)(1) (1985). Under 29 U.S.C. § 1341(a) (1985), a termination date "earlier than ten days after the filing of the notice" with the PBGC is unlawful. The notice of termination of the old plan was dated August 10, 1977 and apparently considered filed on August 16, 1977 by the PBGC, because in a letter of September 7, 1977, a PBGC case officer informed Anthony Ricciardi that the termination date for the old plan could not be earlier than August 26, 1977. In a letter of December 2, 1977, an attorney for the old plan acknowledged, after phone conversations with the PBGC case officer, that the termination date of the old plan would be August 30, 1977. The final PBGC notice of sufficiency gave August 30, 1977 as the termination date.

It is therefore apparent that the old plan is a "predecessor plan" of the new plan.

The only other argument offered by defendant is that Thomas Ricciardi was the President of the firm, and a trustee of the plan, not one of the rank-and-file employees ERISA was meant to protect. The implication of this is that the ERISA definition of "years of participation" should be applied to some distributions but not others. Unfortunately, this view finds no support within ERISA which, by its own terms, allows a "participant or beneficiary" to file suit to recover benefits. 29 U.S.C. § 1132(a)(1)(B) (1985); *see Morse v. New York State Teamsters Conference Pen-*

*sion and Retirement Fund,* 580 F.Supp. 180, 184 (N.D.N.Y.1983) (managerial persons are proper parties to bring civil actions to enforce rights under ERISA); *Kann v. Keystone Resources, Inc.,* 575 F.Supp. 1084, 1090 (W.D.Pa.1983) (plaintiff's status as former corporate officer and trustee of pension plan no bar to his receiving benefits).

Under ERISA, therefore, the phrase "years of participation" in the new plan must be interpreted to mean years of service with the employer. The 55% forfeiture levied against Thomas Ricciardi was illegal under ERISA.

■ Even if there were no question of the legality of the forfeiture under ERISA, this Court would still review the trustees' decision to determine whether it was arbitary and capricious. *Rosen v. Hotel and Restaurant Employees & Bartenders Union,* 637 F.2d 592, 596 n. 5 (3d Cir.1981); *Petrella v. NL Industries, Inc.,* 529 F.Supp. 1357, 1366–67 (D.N.J.1982). The factors relevant to this determination have been summarized as follows: "1) uniformity of construction of the plan; 2) interpretation of the plan contrary to its terms; 3) fair interpretation and the reasonableness of the interpretation; and 4) unanticipated costs."[2] *Carr v. Trustees of Hotel & Restaurant Employees,* 585 F.Supp. 949, 952 (E.D.Pa.1984). *See also Dennard v. Richards Group, Inc.,* 681 F.2d 306, 314 (5th Cir.1982) (same factors presented in three tests).

Different treatment is evidence of arbitrariness. *Dennard,* 681 F.2d at 315. Inasmuch as the only prior distribution under the new plan, the Ferina distribution, was based on a diametrically opposed interpretation of "years of participation," it is impossible to credit the trustees who imposed the 55% forfeiture on Thomas Ricciardi for "uniformity of construction of the plan," or for having made a fair and reasonable interpretation of the plan. The new plan did not define "years of participation," so the

---

**2.** The fourth factor "unanticipated costs" is relevant to defined benefit plans, not defined contribution plans. *Dennard v. Richards Group, Inc.,*

681 F.2d 306, 314 n. 12 (5th Cir.1982). *See* 29 U.S.C. § 1002(34), (35) (1985) for definitions.

distribution to Thomas Ricciardi was not contrary to the terms of the new plan. However, the only reasonable interpretation to be made, absent an express definition in the new plan, was the one dictated by ERISA and followed in the Ferina distribution. Instead the remaining trustees chose an interpretation that enriched themselves at the expense of Thomas Ricciardi. The trustees' action conflicted with the termination date for the old plan worked out with the PBGC. Moreover, the trustees' interpretation conflicted with the one made by the Internal Revenue Service (IRS) when the new plan was filed for tax exempt treatment of employers' contributions in 1977. Plaintiff's Exhibit L shows that the IRS interpreted "years of participation" to mean "years of service, including years before the participants entered the plan." This merely applied the ERISA requirements of 29 U.S.C. § 1053(a)(2) (1985). Finally, various exhibits submitted by plaintiff, notably Exhibits E, T and X, strongly suggest that Anthony and Rudolph Ricciardi, and Donald Biber, the accountant for the new and the old plan, all assumed that in distributions to new plan participants they would be credited for years of service with the firm, not merely for years of participation in the new plan.

In a deposition submitted as Exhibit G accompanying defendant's brief, Donald Biber opined without explanation that the Ferina distribution was an "error." Unless Mr. Biber simply means that he now regrets the Ferina distribution, "error" is a meaningless concept. The Ferina distribution was consistent with law and inconsistent neither with the terms of the new plan nor with any prior distribution under the new plan.

Defendant has failed to raise a genuine issue of material fact. Under the tests summarized by the *Carr* court, 585 F.Supp. at 952, we find that the 55% forfeiture assessed against Thomas Ricciardi was arbitrary and capricious.

In sum, the trustees' action in this case was unlawful both because it violated ERISA and because it was arbitrary and capricious. Summary judgment will be granted in favor of plaintiff.