Frank MUSIC, Plaintiff-Appellant,

v.

WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND, Defendant-Appellee.

No. 79–4251.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 15, 1981.

Decided Aug. 2, 1983.

As Amended on Denial of Rehearing Aug. 29, 1983.

Dennis K. Bromley, Robert A. Gordon, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendant-appellee.

Stephen McKae, Moore, Sizoo & Cantwell, Oakland, Cal., for plaintiff-appellant.

Before SKOPIL, ALARCON, and BOOCHEVER, Circuit Judges.

ALARCON, Circuit Judge:

Appellant Frank Music appeals from a grant of summary judgment in favor of the Western Conference of Teamsters Pension Trust Fund and the denial of his cross-motion for summary judgment. For the reasons stated below, we reverse the judgment of the district court.[1]

FACTS

Frank Music (hereinafter "Music") was a participant in the Western Conference of Teamsters Pension Trust Fund (hereinafter "Trust Fund") for approximately 20 years before he suffered a disabling heart attack on November 6, 1975, at age 47.

Music thereafter applied for federal social security disability benefits (hereinafter "federal disability"). In August of 1976, the Social Security Administration declared Music permanently disabled and therefore eligible to receive those benefits. The federal disability insurance program requires a "waiting period" of five full, consecutive calendar months between the date an applicant first becomes disabled and the applicant's "date of entitlement", upon which he or she is eligible to receive benefits. 42 U.S.C. § 423(c)(2). Music was therefore declared eligible to receive federal disability benefits as of May 1, 1976, which was five full consecutive calendar months after his November heart attack. His federal disability benefits were paid retroactive to that date.

In August of 1976, Music submitted an application to the Trust Fund for disability retirement benefits [hereinafter "union disability pension."]. The Trust Fund determined that Music was eligible to receive a disability pension,[2] and went about computing the amount of his monthly benefit payments.

Both at the time of Music's application for benefits and at the time of his disabling heart attack, the Pension Plan of the Western Conference of Teamsters [hereinafter "pension plan"] required that a disabled

---

1. This case is before us upon remand by the Supreme Court, —— U.S. ——, 103 S.Ct. 35, 74 L.Ed.2d 48, for reconsideration in light of *United Mine Workers of America Health and Retirement Fund v. Robinson,* 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982).

2. The Pension Plan of the Western Conference of Teamsters in effect on the date Music became disabled provided in relevant part:

ARTICLE VII—DISABILITY RETIREMENT BENEFITS
Section 1—Conditions:
An Employee shall be eligible for a Disability Retirement Benefit, subject to the limitations of Section 6, if
(a) he has not reached his 65th birthday, or retired under Article III,
(b) he has had at least 15 years of Unbroken Service,
(c) he has been covered under the Plan for at least 2 years,
(d) he is disabled and is receiving Disability Insurance Benefits under the Federal Social Security Act, and
(e) Employer Contributions have been made on his account for a total of at least 3,000 Covered Hours in the 16 calendar quarters immediately preceding the calendar quarter during which he first satisfies all of conditions (a), (b), (c), and (d) above.
At the time of his disabling heart attack, Music had satisfied all of the eligibility requirements for a disability retirement benefit other than the one requiring that he be receiving federal disability benefits.

employee be receiving *federal* disability benefits before she or he was eligible to receive a *union* disability pension.[3] Music was therefore not eligible to receive a union disability pension until May 1, 1976, the date on which he became eligible for federal disability benefits. The Trust Fund fixed the amount of his monthly disability benefits by the terms of the pension plan in force on May 1, 1976 (hereinafter "the 1976 plan"). The plan had gone into effect on January 1, 1976.

Music, however, contended that his pension eligibility should commence on the date he became disabled, in November of 1975, and that the amount of his monthly disability benefits should be computed under the more generous terms of the pension plan in effect at that time (hereinafter "the 1975 plan").[4] The effect of the pension plan's five-month "waiting period" eligibility requirement, and thus the question of which benefits Music is entitled to, are the sole issues in this case.[5]

## DISCUSSION

### Jurisdiction and Standard of Review

Music brought this action under § 302 of the Labor Management Relations Act, 29 U.S.C. § 186 (LMRA), and § 404 of the Employee Retirement Income Security Act, 29 U.S.C. § 1104 (ERISA).

Section 302 of the LMRA [29 U.S.C. § 186] contains a general prohibition against employers making payments of money "or other things of value" to union representatives. Section 302(c)(5), however, sets forth an exception to this general prohibition for payments made to an employee welfare or pension fund. Under § 302(c)(5), the general prohibition of § 302 does not apply "with respect to money or other things of value paid to a trust fund established ... *for the sole and exclusive benefit of the employees of such employer, and their families and dependents....*" § 302(c)(5), [emphasis added]. Thus, under § 302(c)(5), a pension trust fund must be operated "for the sole and exclusive benefit of the employees." *Sailer v. Retirement Fund Trust*, 599 F.2d 913, 914 (9th Cir.1979).

■ We have repeatedly emphasized that although § 302(e) grants district courts jurisdiction to determine whether the provisions of a given retirement fund constitute a structural defect in violation of § 302(c)(5), that section does not confer general powers to interfere with the day to

---

3. The Trust Fund, in its brief, has stated that this requirement actually means only that an applicant must be *eligible* to receive federal disability benefits, rather than actually be *receiving* them. *See generally Fase v. Seafarers Welfare & Pension Plan*, 432 F.Supp. 1037 (E.D.N.Y.1977), *aff'd*, 589 F.2d 112 (2d Cir. 1978). We assume that by this concession the Trust Fund has modified this requirement of the pension plan.

4. Under the terms of the 1975 plan, a plan participant qualifying for a disability pension was entitled to monthly disability payments "equal to that ... which the employee would have received ... if the employee had retired at age 65." [Stipulation as to Agreed Upon Statement of Facts 4]. Under this formula, Music would have been entitled to disability retirement benefits of $533.50 per month. On July 17, 1975, however, the trustees of the Trust Fund voted to actuarially reduce the disability retirement benefits. The amendment effectuating this reduction was approved by the trustees in its final form on October 16, 1975, and its effective date was January 1, 1976. Under the modification adopted by the trustees, disability retirement benefits were made equivalent to "early retirement" benefit payments

for disabled participants who are over age 55 on the effective date of their disability retirement benefits. Participants like Music who were under age 55 on the effective date of their disability retirement benefits receive 55 percent of their normal age 65 retirement benefit. Under this plan, Music's full retirement benefit of $533.50 was actuarially reduced to $317.50.

It should be noted here that Music does not allege that he had inadequate notice of the trustees' action lowering benefit amounts, nor does he claim that the trustees' decision to reduce the amounts of disability benefits was arbitrary or unreasonable.

5. Neither the 1975 plan nor the 1976 plan specifically requires that an applicant wait five months for a union disability pension. The five-month waiting period is a specific eligibility requirement only for federal disability benefits. Nevertheless, because an applicant must qualify for federal disability benefits in order to qualify for a union disability pension, the five-month waiting period is *de facto* an eligibility requirement for a union disability pension, and will be treated as such in this opinion.

day fiduciary administration of welfare and pension trust funds. *See Ponce v. Construction Laborers Pension Trust,* 628 F.2d 537, 541 (9th Cir.1980), *Wilson v. Board of Trustees, Etc.,* 564 F.2d 1299, 1300 (9th Cir. 1977); *Burroughs v. Board of Trustees of Pension Trust, Etc.,* 542 F.2d 1128, 1130 (9th Cir.), *cert. denied,* 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977).

■ When pension trustees acting under the authority of the trust fund arbitrarily and capriciously deny pensions to employees a structural defect exists. *Ponce,* 628 F.2d at 541. Such arbitrary and capricious conduct is structurally deficient because it is deemed not to be for the sole and exclusive benefit of the employees.[6] *Id.* at 541–42.

■ Section 302(c)(5) which requires trustees to act for the "sole and exclusive benefit of the employees" imposes on trustees the burden of fiduciary care as defined on traditional equitable principles. *NLRB v. Amax Coal Co.,* 453 U.S. 322, 330, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981). Thus, "a trustee bears an unwavering duty of complete loyalty to the beneficiary to the trust, to the exclusion of the interests of all other parties", *id.* at 329, 101 S.Ct. at 2794. This rule against divided loyalties must be enforced with "uncompromising rigidity." *Id.* at 329–330, 101 S.Ct. at 2794.

In *United States Mine Workers, Etc. v. Robinson,* 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982), where the Supreme Court found that benefits determined in collective bargaining can be overturned only if they are in violation of another federal law, the Court also held that the "sole and exclusive benefit" provision of § 302(c)(5) "is simply that employer contributions to employee benefit trust funds must accrue to the benefit of employees and their families and dependents to the exclu-

sion of all others." *Id.* at 570, 102 S.Ct. at 1231.

While holding that § 302(c)(5) did not authorize federal courts to review for reasonableness the provisions of collective bargaining agreements which fix eligibility rules for an employee benefit trust fund, the Court was careful to draw a distinction between cases like *Robinson* which involved collective bargaining and those where changes in eligibility levels were made unilaterally by the trustees of the fund. The Court recognized that in the latter type of cases:

> The Court of Appeals has held ... "that the Trustees have 'full authority ... with respect to questions of coverage and eligibility' and that the court's role is limited to ascertaining whether the Trustees' broad discretion has been abused by the adoption of arbitrary or capricious standards." Noting that "[t]he institutional arrangements creating this Fund and specifying the purposes to which it is to be devoted are cast expressly in fiduciary form," the court stated that "the Trustees, like all fiduciaries, are subject to judicial correction in a proper case upon a showing that they have acted arbitrarily or capriciously towards one of the persons to whom their trust obligations run."

(citations omitted). *Id.* at 573, 102 S.Ct. at 1233.

Quoting *NLRB v. Amax Coal Co.,* 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981), the Court also iterated that in enacting § 302(c)(5), "Congress intended to impose on trustees traditional fiduciary duties." 455 U.S. at 573 n. 12, 102 S.Ct. at 1233 n. 12. The Court, however, left unanswered the question whether federal courts are authorized to enforce those duties. *Id.*

---

**6.** In the typical case, the challenged eligibility requirement operates to deny the employee a pension altogether. *See, e.g., Ponce v. Const. Laborers Pension Trust,* 628 F.2d 537 (9th Cir. 1980); *Sailer v. Retirement Fund Trust,* 599 F.2d 913 (9th Cir.1979); *Wilson v. Board of Trustees,* 564 F.2d 1299 (9th Cir.1977), *Giler v. Board of Trustees,* 509 F.2d 848 (9th Cir.1975)

In the instant case, the eligibility requirement challenged by Music operated only to *reduce* the amount of his pension, but does not make him ineligible for a pension. Neither Music nor the Trust Fund suggests, however, that Music's claim does not involve an alleged "structural" deficiency in the pension plan.

Although "it would be anomalous to conclude that § 302(c)(5) imposed fiduciary obligations on trustees but that federal courts were powerless to enforce them," *Dudo v. Schaffer,* 551 F.Supp. 1330, 1338 (E.Pa. 1982), *accord Hurn v. Retirement Fund Trust,* 703 F.2d 386 (9th Cir.1983), we also need not resolve that issue. In *Robinson,* the Court stated that the "substantive terms of jointly administered employee benefit plans must comply with the detailed and comprehensive standards of ERISA." 455 U.S. at 575, 1234. In *NLRB v. Amax Coal Co.,* the Court had previously recognized that "ERISA essentially codified the strict fiduciary standards that a § 302(c)(5) trustee must meet." 453 U.S. at 332, 101 S.Ct. at 2795. Thus, the fiduciary provisions of § 404 of ERISA, 29 U.S.C. § 1104, are applicable to the trustees actions in this case. Under § 404(a)(1) a fiduciary must discharge his or her duties with respect to the plan "solely on the interest of the participants and beneficiaries and (A) for the exclusive purpose of providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan." We therefore, have jurisdiction under 29 U.S.C. § 1132. *See Elser v. I.A.M. National Pension Fund,* 684 F.2d 648 (9th Cir.1982), *petition for cert.* filed, 51 U.S.L.W. 3614 (U.S. Feb. 8, 1983) (No. 82–1325).

This court has recognized that trustees must have broad discretion in fashioning eligibility requirements for pensions and that judicial intervention is appropriate only where the trustees' actions in fashioning or applying those eligibility requirements do not have a reasonable basis or are arbitrary and capricious. *See Ponce,* 628

F.2d 541–42; *Sailer v. Retirement Fund Trust,* 599 F.2d 913, 914 (9th Cir.1979).

■ We have previously recognized that Trustees' actions are subject to the same standard of review under ERISA's fiduciary obligations as they are under the MRA. *Elser,* 684 F.2d at 654; *Fentron Industries v. National Shopmen Pension Fund,* 674 F.2d 1300, 1307 (9th Cir.1982); *Gordon v. ILWU–PMA Benefit Fund,* 616 F.2d 433, 438 (9th Cir.1978). Under that standard trustees decisions "may be reversed only where they are arbitrary, capricious or made in bad faith, not supported by substantial evidence, or erroneous on a question of law." *Elser,* 684 F.2d at 655 quoting *Rehmar v. Smith,* 555 F.2d 1362, 1371 (9th Cir.1976).

## THE REASONABLENESS OF THE "WAITING PERIOD" REQUIREMENT

The five-month delay which is the basis of Music's complaint results directly from the pension plan's requirement that an employee be eligible for federal disability benefits in order to qualify for a union disability pension. Similar provisions have been the subject of litigation in this Circuit before.[7] The issue framed by Music here, however, is a relatively narrow one.[8] Music's sole contention is that his eligibility for a union disability pension should commence on the date he suffered his disabling injury, not five months later. In addition, according to Music, the benefit amount to which he is entitled should be computed under the terms of the pension plan in effect on the date he suffered his disabling injury, not under the terms of the pension plan in effect on the date he qualified for federal disability benefits five months later.

7. *See Burroughs v. Bd. of Trustees,* 398 F.Supp. 168 (N.D.Cal.1975), *aff'd,* 542 F.2d 1128 (9th Cir.), *cert. denied,* 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977); *Nudo v. Western Conference of Teamsters,* No. S–77–365 (E.D.Cal. Nov. 13, 1978), CCH Pension Plan Guide Transfer Binder, April, 1975—April, 1979 ¶ 22,587 (1979). *See also Blazquez v. New York City District Council,* 463 F.Supp. 727 (S.D.N.Y. 1979); *Fase v. Seafarers Welfare & Pension*

*Plan,* 432 F.Supp. 1037 (E.D.N.Y.1977), *aff'd,* 589 F.2d 112 (2d Cir.1978).

8. Music does not argue, for example, that requiring an applicant to qualify for federal disability benefits in order to qualify for a union disability pension is itself arbitrary and capricious on its face. Nor does he challenge the pension plan's right to rely on federal disability's medical determination of permanent disability.

■ The burden is initially on the plaintiff to show that the eligibility requirement under consideration is unreasonable or is "arbitrary and capricious." Once that showing is made, however, the burden shifts to the trustees of the Trust Fund to come forward with evidence establishing the reasonableness of the eligibility requirement, based on the purposes of the fund. *Roark v. Lewis*, 401 F.2d 425, 428 (D.C.Cir. 1968).

■ The Trust Fund concedes that "[t]he only date that is important for Plan eligibility purposes is the effective date of qualification for Social Security benefits; the date that applicant suffered his heart attack has no significance under the Plan's eligibility scheme." In our view, Music has carried his initial burden of demonstrating that this is arbitrary and capricious.

■ One of the major purposes of the disability retirement pension, as evidenced by the terms of the pension plan, is to provide financial benefits for permanently disabled, long term employees who are not yet eligible for other pension benefits, and on whose behalf substantial contributions have been made to the Trust Fund. Each of the other eligibility requirements for a disability pension in both the 1975 and 1976 plans [9] is specifically related to that purpose. The five-month waiting period, by contrast, bears no apparent rational relationship to that purpose. It is difficult to see, at least *prima facie,* how delaying the *eligibility* of a permanently disabled applicant who satisfies every other eligibility requirement serves any of the purposes of the disability pension set forth above. In our view, where a plan participant satisfies the other eligibility requirements for a disability pension, including the age, length of service, and employer contribution requirements, that participant has a right to receive a disability pension which vests immediately when that participant becomes permanently disabled. It may be that *commencement of the benefits* to which a disabled participant has earned the right can reasonably be delayed for five months after the date of the disabling injury. Nevertheless, it is the occurrence of the disabling injury which ultimately and fundamentally establishes the participant's right to the disability benefits which are ultimately paid. *Prima facie,* it seems unreasonable to fix inception of a participant's right to benefits on any date other than the one on which the final event ultimately providing the grounds for a successful claim for benefits has occurred.

■ The Trust Fund offer three arguments in support of delaying an applicant's eligibility until the five-month waiting period has passed. First, it argues that a five-month waiting period is necessary to confirm that the disability under consideration is permanent. The waiting period thus performs an evidentiary role in the determination of disability—it assists in sorting permanent disabilities out from those which are only temporary.[10]

This argument is not persuasive. The Trust Fund offers no reasons for transforming a waiting period which serves an evidentiary function into an eligibility requirement. Music does not deny that it may be sound medical practice to delay the final determination of permanent disability

---

**9.** The 1976 Plan provides in relevant part:
ARTICLE VI—DISABILITY RETIREMENT BENEFITS
Section 1—Conditions:
 A Vested Participant or Age Pensioner shall be eligible for a Disability Retirement Benefit, subject to the limitations of Section 3, if
 (a) he has not reached his 65th birthday,
 (b) he is receiving Disability Insurance Benefits under the Federal Social Security Act, and
 (c) he has been credited with a total of at least 3,000 Covered Hours in the calendar year in which he first satisfies all of the conditions above and in the four preceding calendar years.
 The term "covered hour" means an hour of employment of an employee for which an employer contribution is paid on his account into the trust fund. See 1976 Plan, Art. I, Sec. 12.
 The relevant terms of the 1975 plan are set forth in note 1, *supra.*

**10.** This is the rationale put forward in the legislative history of that provision in the Social Security Act. *See* H.Rep. No. 1189, 84th Cong. 1st Sess. 6 (1955).

**420**

for some reasonable period after the injury occurs. He argues, rather, that an applicant's eligibility should be retroactive to the date of the disabling injury, *the permanence of which is merely confirmed by the waiting period.*[11] The Trust Funds argument does not address that issue.

 Secondly, the Trust Fund claims that the Trust Fund would incur increased administrative costs if the Trust Fund were not permitted to rely on the five-month waiting period. We are told that the Trust Fund, for example, would be forced to conduct its own investigation into when a worker became injured, into whether subsequent events caused the disability, and into "other matters pertinent to a determination of when the applicant became 'disabled'...." This argument is not convincing. The Trust Fund is *presently* presupposing that the injury occurring five months earlier, not some later one, caused the disability. As conceded by appellee in its first argument, *supra,* the Trust Fund *presently* relies on the five-month waiting period to confirm the permanence of that earlier injury. As noted above, Music concedes that the pension plan can delay determination of the employee's eligibility while the medical determination of the injury's permanence is being made, but insists that eligibility should be retroactive to the date the disabling injury occurred once that determination has been made. The Trust Fund had not explained how making eligibility retroactive to the date the disabling injury occurred would impose any additional administrative burden on them.

 Finally, the Trust Fund argues that the plan's reliance on the five-month waiting period "recognizes that most individuals receive temporary disability payments from their health and welfare plans or other in-surance during this five-month interim." While the thrust of this argument is not completely clear, the Trust Fund is perhaps contending that delaying payment of disability pension benefits is reasonable because it would enhance the actuarial soundness of the pension plan.[12] The Trust Fund might further suggest that such a policy is not at odds with the purpose of the pension plan, since affected workers receive income from other sources during that period.

We do not find this argument persuasive. Music is not arguing that he is entitled to disability benefits for the five-month period immediately following his disabling injury; indeed, Music's counsel made quite clear at oral argument that Music is not seeking any benefits for that five-month period.[13] Music is arguing only that his *eligibility* for benefits should be fixed as of the date of his disabling injury *for purposes of determining whether* he is covered under the 1975 plan or under the 1976 plan. The Trust Fund's argument does not address that issue.

 The Trust Fund has demonstrated no reasonable justification for delaying Music's eligibility for a disability pension for five months after the date of his disabling injury. Music should therefore be deemed eligible for his pension as of November 5, 1975 and his benefits computed under the rate fixed by the 1975 plan.[14]

The judgment in favor of the Western Conference of Teamsters Pension Trust Fund is reversed. The order denying Music's cross-motion for a summary judgment is vacated. This matter is remanded to the district court for further proceedings consistent with the views expressed in this Opinion.

The petition for rehearing is denied.

---

11. For purposes of this appeal, we assume that the "date of the disabling injury" is that used by the Social Security Administration in determining an applicant's "date of entitlement." The "date of entitlement," as noted earlier, is fixed after five consecutive calendar months "throughout which the individual ... has been under a disability...." 42 U.S.C. § 423(c)(2)(A).

12. *See generally, Tomlin v. Board of Trustees,* 586 F.2d 148 (9th Cir.1978); *Wilson v. Board of Trustees,* 564 F.2d 1299 (9th Cir.1977).

13. Thus, the issue of whether the Trust Fund might reasonably delay commencement of ben-

efits for 5 months, or might offset the union disability benefits for those five months by the amount of other benefits received from other sources, is not before us.

14. We are mindful of the fact that under the 1976 plan, disability benefits payable to plan participants who are 55 or over on the "effective date of their disability retirement benefits" are payable at a somewhat higher rate than similar benefits for participants who are under age 55 on the "effective date of their disability retirement benefits." 1976 Plan, Art. VI, § 2. The question may arise as to whether the "effective date of disability retirement benefits"

for purposes of this provision should be considered the *actual* date of the disabling injury, as in this case, or the effective date of the *actual payments,* which under the 1976 plan is

some five months later. That particular issue was not presented by this case, and we do not address it here.