**Stanley BOKUNEWICZ and Joseph Bell,**

v.

**PUROLATOR PRODUCTS, INC.**

**Appeal of PUROLATOR PRODUCTS, INC.**

**Appeal of Stanley BOKUNEWICZ and Joseph Bell.**

Nos. 89–1894, 89–1950.

United States Court of Appeals, Third Circuit.

Argued May 24, 1990.

Decided July 11, 1990.

Kurt Denke (argued), Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, Pa., for appellees-cross-appellants Stanley Bokunewitz and Joseph Bell.

Lee F. Hutton (argued), Duvin, Cahn & Barnard, Cleveland, Ohio, for appellant cross-appellee Purolator Products, Inc.

Before COWEN, NYGAARD and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

Purolator Products, Inc. appeals at No. 89–1894 from the judgment of the district court after a non-jury trial, awarding damages in favor of Joseph Bell and Stanley Bokunewicz (employees). Bell and Bokunewicz appeal at No. 89–1950 from the denial of a request for penalties, costs and counsel fees.

The Purolator appeal presents the question whether a previous award by an arbitrator was final and binding, thereby precluding the district court from considering the Bell and Bokunewicz claims. We must also decide whether employees' claims for disability retirement benefits ripened prior to execution of an agreement relating to the closing of a Purolator plant and whether Purolator was a proper party to the employees' lawsuit. In the cross-appeal we must determine whether the district court erred when it declined to award attorneys' fees and costs to the employees.

Jurisdiction in the trial court was proper based on 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. This appeal was timely filed. Rule 4(a), F.R.A.P.

Our review of the district court's decision as to the binding effect of the labor arbitration and the applicability of the Labor

Management Relations Act, 29 U.S.C. § 185, is plenary. *See York Bank and Trust Co. v. Federal Savings & Loan Ins. Corp.*, 851 F.2d 637 (3d Cir.1988), *cert. denied*, 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989). To review the decision as to when the employees' pension rights vested, we must separate the issue into its respective parts, applying the clearly erroneous standard to the factual component and the plenary standard to the legal component. *Ram Constr. Co. v. American States Ins. Co.*, 749 F.2d 1049, 1053 (3d Cir.1984). Finally, we review the district court's denial of attorneys' fees and costs under the clearly erroneous standard. *See Baker Indus., Inc. v. Cerberus, Ltd.*, 764 F.2d 204, 209–10 (3d Cir.1985).

Because the facts in the district court proceedings are not in dispute, we will summarize the findings of the court.

### I.

Employees were injured while working at Purolator's Ringtown plant and ordinarily would have qualified for disability pensions. Before they could complete the process necessary to receive the pensions, however, Purolator closed its Ringtown plant and entered into a closure agreement with the Independent Union of Purolator Employees, Inc. The closure agreement provided that all "pending claims" against Purolator were to be extinguished. Purolator's position was that the term "pending claims" included the disability pensions sought by Bell and Bokunewicz. Employees, however, took the position that their pensions were not subject to the closure agreement because their rights were vested and that, in any case, the closure agreement was never intended to apply to their claims.

Since 1973, the union has represented employees at the Ringtown plant. During that time, the union and Purolator entered into a series of collective bargaining agreements, the last of which was to be effective from May 27, 1983 to May 26, 1986. In this agreement, Purolator contracted to provide a pension plan for its employees, the terms of which were set out in documents for the Ringtown Hourly Paid Employees' Pension Plan. The parties stipulated that the appellees satisfied the requirements for disability pensions and would have received them had the plant not closed.

On November 16, 1983, Purolator announced its intention to terminate the operations at Ringtown. The next day, Bokunewicz sustained injuries in the course of his employment. On November 18, Bell also sustained work-related injuries.

During November and December of 1983, Purolator and the union met to negotiate a closure agreement. The plant was closed in March, 1984 without a closure agreement. An agreement was finally reached in July, 1984, which provided that excess funds in the pension plan would be distributed to the pensioners. In exchange, the union agreed that the agreement "represent[ed] a final and complete disposition of all claims or disputes, known or unknown, which the Union or Individuals had, has or may have with the Company...." Opinion of June 20, 1989, at 3.

In May and September, 1985, the union informed Purolator that Bell and Bokunewicz had received Social Security Award Certificates and were, therefore, entitled to pensions. Purolator, however, claimed it was not required to provide the pensions because of the closure agreement. The union filed a grievance and the parties went to arbitration. The arbitrator decided that he lacked jurisdiction. Following the arbitrator's decision, the employees filed separate suits in the Pennsylvania Court of Common Pleas which were removed to the district court as issues under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, the Employment Retirement Security Act of 1974 (ERISA), as amended, 29 U.S.C. §§ 1001–1461 and contract law. The district court held that Bell and Bokunewicz were entitled to disability pensions, but denied penalties, costs and attorneys' fees. These appeals followed.

### II.

■ We are satisfied that the district court was correct when it determined that

the award of the arbitrator did not preclude consideration of the employees' claims in federal court. The arbitrator identified the issues before him as "(1) Are the grievances arbitrable?; (2) If the grievances are arbitrable, are the grievants entitled to disability retirement benefits?; and, (3) If the grievants are entitled to disability retirement benefits, what shall the remedies be?" The arbitrator then concluded that "the grievances are not arbitrable. The substantive issues presented in the grievances are therefore beyond the authority of the arbitrator." Opinion of June 20, 1989, at 14.

Purolator asserts that the arbitrator's award, denying employees benefits is final and binding. It argues that there is a strong national policy favoring resolution of labor disputes through arbitration as was first announced in the *Steelworkers' Trilogy: United Steelworkers of Am. v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); the parties in this case voluntarily sought an alternative form of dispute resolution through arbitration; even questions ordinarily reserved for the courts, including arbitrability, may be submitted to arbitration if the parties consent, *Johnson v. UFCW, Local No. 23*, 828 F.2d 961, 964 (3d Cir.1987); the arbitrator determined the issue of substantive arbitrability in favor of Purolator when it discussed and decided the substantive issues of the case; the arbitrator then rendered an informed opinion dismissing employees' claims for disability retirement benefits; the parties are, therefore, bound by this decision.

Purolator next asserts that even if we agree with the district court's conclusion that it was not precluded from reviewing the effect of the closure agreement, we must reverse that part of the decision pertaining to the issue of vesting of the employees' rights. Purolator argues that: "the mere fact that arbitrable and not arbitrable issues co-exist is insufficient to con-

fer [the district court] with jurisdiction over the entire dispute," Opinion of June 19, 1989, at 17; and that the district court did not overcome the presumption of arbitration in its rationale supporting the decision to hear the vesting issue.

### III.

■ We disagree. The arbitrator said that "the grievances are not arbitrable. The substantive issues presented in the grievances are therefore beyond the authority of the arbitrator." It is difficult to perceive language more clear and free from ambiguity than that contained in the official decision of the arbitrator. He said that he was *not* deciding the case because the grievances (1) are not arbitrable and (2) are beyond his authority to decide. He decided that he was without jurisdiction. It is true that having admitted lack of jurisdiction, he went off on an *obiter dictum* frolic of his own and volunteered some observations on the merits. But everything after denial of jurisdiction by the arbitrator, including the discussion of substantive issues, was *dicta*, pure and simple. We agree with the district court:

> [T]he arbitrator did stray briefly into the merits, but despite some careless wording, he certainly did not intend to decide anything other than jurisdiction. The decision cannot fairly be read as an endorsement of [Purolator's] position.

Opinion of June 20, 1989, at 14–15; *see Daigle v. Gulf State Utilities Co., Local No. 2286*, 794 F.2d 974, 977 (5th Cir.), *cert. denied*, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 704 (1986).

Purolator's argument that this court has held that issues normally adjudicated by the courts, including arbitrability, may be decided by an arbitration if the parties consent, does not convince us otherwise. *See Johnson*, 828 F.2d 961. To be sure, in *Johnson*, we said that "the parties ... may agree to submit the question of arbitrability to an arbitrator." 828 F.2d at 964 (citing *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 n. 7, 80 S.Ct. 1347, 1353 n. 7). But a *Johnson* issue arises only when a

party who originally agreed to arbitration seeks to renege on the agreement after the arbitrator in fact determines that he or she has jurisdiction. *Johnson* prevents a party from going to court for a "second opinion" on jurisdiction after the parties agree to let the arbitrator decide the issue and the arbitrator decides that the issue *is* arbitrable. *Johnson* is of no help to Purolator here because the arbitrator found that the issue was *not* arbitrable.

The relationship between the courts and the arbitrator in labor matters is well settled. In 1960, the Supreme Court made reference to this relationship in *Steelworkers' Trilogy, supra.* The issue was revisited in *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Nolde Bros. Inc. v. Local No. 358, Bakery & Confectionery Workers' Union,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977); and *AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). It is now labor-management doctrine that the question of arbitrability is generally a question for the court, not the arbitrator. See *AT & T,* 475 U.S. at 649, 106 S.Ct. at 1418. There are no circumstances here, as were present in *Johnson,* to depart from this important general precept of labor law.

### IV.

◼ Moreover, we acknowledge the force of the policy that honors those grievance and arbitration procedures required by a collective bargaining agreement. *See Viggiano v. Shenango China Div. of Anchor Hocking Corp.,* 750 F.2d 276, 279 (3d Cir.1984) (court stayed ERISA claims seeking health benefits pending arbitration of whether benefits were provided for by agreement); *Nolde Bros.,* 430 U.S. 243, 97 S.Ct. 1067 (even when a collective bargaining agreement has terminated, disputes subject to arbitration before termination must be arbitrated). However, the closure agreement here, which was in force at the time the grievance was filed, did not provide for binding arbitration. The closure agreement was the successor to the collec-

tive bargaining agreement. Because this agreement did not provide for arbitration and the arbitrator found he was without jurisdiction to hear the dispute, we do not frustrate federal policy when we permit judicial intervention in this case.

Finally, we are satisfied with the district court's rationale supporting its determination that it had jurisdiction:

> In this case, the dispute first worked its way through the defendant's office, then proceeded to arbitration and only then reached the litigation stage. Over five years have passed since the plaintiffs were injured. The Union, which under the collective bargaining agreement was to play a pivotal role in the arbitration process, no longer exists. It would be odd to conclude that the Union not only intended the agreement to arbitrate to survive contract termination, but also to survive the Union's demise. Second, one of the primary reasons for arbitration is that it assumed that because arbitration is faster than litigation, parties prefer it. *Nolde,* 430 U.S. at 254, 97 S.Ct. at 1073. However, sending the vesting issue to arbitration while retaining jurisdiction over the question of interpreting the closure agreement can only delay resolution of this case. For these reasons, I hold that this Court, not an arbitrator, has jurisdiction to hear all pending issues.

Opinion of June 20, 1989, at 19. We hold that under the facts of this case, the decision of the arbitrator does not preclude judicial consideration of the merits.

### V.

◼ We also hold that this action is not barred by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Purolator argues that this dispute brings into issue both questions of contract and union representation in a hybrid section 301 suit, therefore, "[a]n employee must demonstrate that he did not receive fair representation from the Union," as well as breach of contract to succeed on the merits, *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Findley v. Jones Motor Freight,* 639 F.2d 953 (3d Cir.1981).

However, the requirement that an employee bring suit against the union for breach of the duty of fair representation before suing the employer is designed to foster the grievance and arbitration procedure of the LMRA. We have held that here there was no grievance or arbitration procedure available to the employees. Therefore, section 301 does not apply. *See Daigle*, 794 F.2d at 977.

## VI.

■ Two issues in Purolator's appeal remain. First, whether the employees' rights to benefits had vested at the time of the closure agreement. If the rights were vested, the union and Purolator were without power to bargain those benefits away. *Allied Chem. & Alkali Workers of Am., Local No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 398 n. 20, 30 L.Ed.2d 341 (1971). If the rights were not vested, we must decide a second issue: whether Purolator and the union intended to bargain the employees' rights away.

### A.

Purolator asserts that the 1983 collective bargaining agreement clearly provided that vesting of a disability benefit did not occur until employees applied for, and qualified for, Social Security benefits. Purolator argues that under the terms of the pension plan:

*Disability* means, with respect to an Employee, that he is disabled by any physical or mental impairment which can be expected to either be of indefinite duration or result in death, as determined by the Plan administrator, and that such Employee is eligible for a disability insurance benefit under the Social Security Act....,

App. at 472; Purolator further argues that the 1983 collective bargaining agreement clearly and unambiguously supplements this language, providing, "Disability Retirement will be paid the first of the month following initial Social Security Disability payment," app. at 357, 255; employees in the instant case did not apply for Social

Security benefits until after the plant closed and the closure agreement was executed; therefore, employees' disability pension benefits were not vested until after the closure agreement was executed.

The district court determined that the relevant documents relating to the question of vesting were the 1983 collective bargaining agreement and the pension plan, but "the documents [were] ambiguous, that they are reasonably susceptible of different constructions and capable of being understood in more than one sense." Opinion of August 17, 1989, at 7–8. Accordingly, the court then considered parol evidence, including the past practices of Purolator, noting its treatment of another employee, Arthur Hartzell. *Hutchinson v. Sunbeam Coal Corp.*, 513 Pa. 192, 201, 519 A.2d 385, 390 (1986) (the determination of ambiguity is a matter for the court and once that determination is made, parol evidence is admissible). The court found that it was Purolator's policy to pay disability benefits retroactively and, therefore, rejected Purolator's position that the company did not consider disability pension plans vested until the first payment is made. The court, therefore, determined that the employees' disability pensions were vested before the closure agreement was signed and that the closure agreement had no effect on the pensions.

### B.

■ We are convinced that the instant case is analogous to the facts facing the Ninth Circuit in *Music v. Western Conference of Teamsters Pension Trust Fund*, 712 F.2d 413 (9th Cir.1983). In that case, an employee who was injured was entitled to disability benefits contingent upon his acquiring a Certificate of Disability from the Social Security Administration. Between the date the employee was injured and the date he received the Certificate of Disability, a new collective bargaining agreement, with diminished benefits, was executed. The question presented in *Music*, as in the instant case, was when the benefits vested. The court held:

In our view, where a plan participant satisfies the other eligibility requirements for a disability pension, including the age, length of service, and employer contribution requirements, that participant has a right to receive a disability pension which vests immediately when that participant becomes permanently disabled. It may be that *commencement of benefits* to which a disabled participant has earned the right can reasonably be delayed for five months after the date of the disabling injury. Nevertheless, it is the occurrence of the disabling injury which ultimately and fundamentally establishes the participant's rights to the disability benefits which are ultimately paid.

712 F.2d at 419 (emphasis supplied).

It is not clear from the 1983 collective bargaining agreement and pension plan when employees' benefits vested. The contract may have contemplated that benefits vest when the employee was injured, as in *Music*, or when the employee received the first payment from the pension, as was urged by Purolator. Accordingly, the district court was correct when it looked to parole evidence to determine when employees' benefits vested. That evidence indicates that it was Purolator's practice to award benefits retroactively, therefore, the district court did not err in deciding benefits vested when the employee was injured. Accordingly, we do not fault the district court's analysis and affirm.

### C.

■ As an alternate independent ground for its decision the district court determined that the closure agreement was never intended to cover the claims of the employees:

[Employees] were entitled to disability pensions under the 1983 collective bargaining agreement. Unless there was a meeting of the minds to divest the [employees'] rights, they are entitled to their pensions. I find that there was no meeting of the minds to extinguish the [employees'] pensions. Consequently, the closure agreement had no effect on the [employees'], and their disability pension benefits are governed by the 1983 collective bargaining agreement.

Opinion of August 17, 1989, at 13. We affirm the court on this alternate basis as well.

### VII.

■ Finally, Purolator argues that it was not a proper party to the litigation and that, instead, the employees should have sued the trustees of the pension plan. We agree with the district court's disposition of this issue:

This defense should have been pled in [Purolator's] answer. Fed.R.Civ.P. 8(c). A failure to do so is a waiver of the defense unless leave of court is granted to amend under Fed.R.Civ.P. 15. *Albee Homes, Inc. v. Lutman*, 406 F.2d 11 (3d Cir.1969); *Transport Trailer Service, Inc. v. Upjohn*, 506 Fed.Supp. 442 (E.D. Pa.1981). Amendment is permitted under Rule 15(b) even after the close of the evidence, but only if the issue has been explicitly or implicitly tried by the parties. The issue was not tried in this case. Nor am I inclined to grant the defendant leave to amend under Rule 15(a) which provides that amendments are to "be freely given when justice so requires." There is no justice in allowing Purolator to amend their answer to assert that they are not the proper party to this suit. Purolator signed the closure agreement which terminated the pension plan and thereby damaged the [employees]. It fought this case through arbitration in the courts for close to five years. Closing argument is simply too late a time to interpose a dubious, technical argument about the proper party in interest. Accordingly, the court will not consider [Purolator's] argument.

Opinion of August 17, 1989, at 14.

### VIII.

■ In their cross appeal, Bell and Bokunewicz request that we remand these proceedings for a determination of an award of costs and counsel fees under Section 1132(g) of ERISA. They argue that the

district court improperly stated that "ERISA doesn't cover this type of benefit" and "I don't see any relief for you" with respect to penalties under ERISA.

We are persuaded that there was no error here. First, the employees did not state a pure ERISA claim; they relied on other grounds for relief as well. They did not name the trustees of the fund as defendants as is the procedure in the typical ERISA proceeding, but named only the company. Moreover, the court found that the appellees "were entitled to disability pensions under the 1983 collective bargaining agreement" and that "the closure agreement had no effect on the plaintiffs, and their disability pension benefits are governed by the 1983 collective bargaining agreement." Employees predicated their section 301 case on a triad of interrelated concepts: section 301 of the LMRA, ERISA and contract law. Under these circumstances, we do not believe that the district court erred in refusing to award the employees penalties, costs and counsel fees.

### IX.

We have considered the contentions of all parties on both the appeal and cross-appeal in this matter. The judgment of the district court will be affirmed in all respects.

COWEN, Circuit Judge, concurring.

I write separately to express my view of the proper treatment of the arbitrator's award. By focusing exclusively on the last two sentences of the arbitrator's opinion [1] and dismissing entirely the reasons leading to those concluding sentences, the majority improperly allows the district court to ignore the arbitrator's interpretation of the closure agreement and to substitute its own contrary interpretation. This practice is clearly proscribed by Supreme Court and Third Circuit precedent, which the majority fails to distinguish.

Nonetheless, I concur in the result. Correctly interpreted, the arbitrator's award allows the vested pension rights of Bell and Bokunewicz to be altered without their consent. Such an interpretation is contrary to public policy and renders the arbitrator's award unenforceable. Accordingly, I concur in the result reached by the majority that the arbitrator's award is of no effect, but for an entirely different reason.

### I.

Because the majority did not summarize the arbitrator's opinion, I will do so. The arbitrator began by identifying the issues submitted to him: "(1) Are the grievances arbitrable? (2) If the grievances are arbitrable, are the grievants entitled to disability retirement benefits? (3) If the grievants are entitled to disability retirement benefits, what shall be the remedy?" App. at 309.

After reciting the facts and summarizing the positions of Purolator and the union, the arbitrator identified the dispositive issue: whether the grievances are "arbitrable," that is, whether the union and Purolator had agreed to arbitrate grievances like those arising from Bell's and Bokunewicz's claims for disability pension benefits.

The arbitrator observed that federal law generally favors arbitration of labor disputes unless there is clear and specific language that would exclude an issue from arbitration. In particular, the arbitrator noted the Supreme Court's decision in *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), which held that expiration of a collective agreement did not terminate an employer's obligation to arbitrate disputes that arose after the agreement lapsed. The employer was required to arbitrate later-arising disputes if the disputes would have been arbitrable had they arisen during the term of the agreement. The Court held that the presumptions favoring arbitrability of labor disputes were not overcome merely by termination of the agreement, but must be negated expressly or by clear implication. *Nolde Bros.*, 430 U.S. at 255, 97 S.Ct. at 1074.

---

**1.** "The grievances are not arbitrable. The substantive issues presented in the grievance are therefore beyond the authority of the arbitrator." App. at 317.

The arbitrator proceeded to interpret the agreements between the union and Purolator in light of *Nolde Bros.* He examined first the 1983 collective bargaining agreement, which contains a clause requiring arbitration of "any difference" that arises between the union and Purolator concerning the meaning, application of or compliance with the provisions of the collective agreement.[2] Since Bell and Bokunewicz claimed they were entitled to disability pension benefits under a provision of the 1983 collective agreement, the arbitrator concluded that the agreement would have required arbitration of Bell's and Bokunewicz's grievances.

The arbitrator next examined the closure agreement to the extent that it terminated or modified any provisions of the collective agreement. In particular, he noted that paragraph 3 of the closure agreement changed the termination date of the 1983 collective agreement from May 27, 1986 to July 14, 1984. The dispute between Purolator and Bell and Bokunewicz arose after that date. The arbitrator remarked that had the closure agreement contained only this paragraph, the case would have been indistinguishable from *Nolde Bros.* The mere fact that the collective bargaining agreement terminated would not terminate the contractual duty to arbitrate disputes arising after the agreement was terminat-

ed, absent express provisions or clear implication precluding arbitration. *See Nolde Bros.*, 430 U.S. at 255, 97 S.Ct. at 1074.

The arbitrator found such express provision in paragraphs 4 and 5 of the closure agreement.[3] In these paragraphs, the arbitrator wrote, the union and its members recognized the closure agreement as "a final and complete disposition of all claims or disputes, known or unknown" and waived any future right "to initiate ... any charges, complaints, claims, legal actions or grievances against the Company...." App. at 328. The arbitrator noted the agreement excepted certain claims from this broad waiver, namely claims arising under Pennsylvania's unemployment and workers' compensation statutes, as well as claims based on certain computational errors,[4] but found that no exception applied to Bell's and Bokunewicz's claims. The arbitrator concluded:

> The closure agreement explicitly prevents grievants, or the union on behalf of the grievants, from processing a claim in any forum, including the grievance procedure.... The results of the negotiations clearly waived their right to proceed with claims then in existence or to present claims thereafter. If a claim cannot be advanced in the grievance pro-

---

**2.** Specifically, paragraph 36 of the collective agreement provides:

> Should any difference arise between the Company and the Union or its members employed by the Company as to the meaning and application of, or compliance with, the provisions of this Agreement, an earnest effort will be made to settle such difference immediately in the following manner....

App. at 343. The agreement then lists a four step process, culminating in arbitration.

**3.** Paragraphs 4 and 5 of the agreement provide:

> 4. The Union and individuals who were members of the bargaining unit at the Company's Ringtown, Pennsylvania facility (hereinafter referred to as "Individuals") acknowledge that this Agreement represents a final and complete disposition of all claims or disputes, known or unknown, which the Union or Individuals had, has or may have with the Company except claims arising under the Pennsylvania Unemployment Compensation Act and claims arising under the Pennsylvania Workers' Compensation Act;

> 5. The Union and Individuals agree to withdraw any and all charges, complaints, grievances or claims now pending, and further agree not to initiate, maintain or participate in any charges, complaints, claims, legal actions or grievances against the Company except claims arising under the Pennsylvania Unemployment Compensation Act and claims arising under the Pennsylvania Workers' Compensation Act;

App. at 328.

**4.** Paragraph 6 of the Closure Agreement provides:

> 6. Notwithstanding the above, the Union and Individuals retain the right to pursue through appropriate channels the correction of mechanical, arithmetic or computational errors which might arise in connection with the Company's fulfillment of its termination obligations in individual cases.

App. at 328.

cedure, it is beyond the scope of the arbitrator's authority.

App. at 315.

The arbitrator supported his interpretation of the closure agreement in two ways. First, he observed that an earlier draft agreement had preserved "individual claims" from waiver, but this provision did not appear in the final closure agreement. He conjectured this language would have preserved claims like Bell's and Bokunewicz's. He found the absence of this provision from the final agreement suggested a deliberate effort to waive claims like Bell's and Bokunewicz's.

Second, the arbitrator noted the broad waiver was a logical and sensible part of the deal Purolator struck with the union. Under the closure agreement, Purolator agreed to fund retirement pensions with surplus assets in the pension fund. After that funding was complete, Purolator would have no additional money with which to satisfy claims that arose later, like Bell's and Bokunewicz's. In return for their promise to fund retirement pensions, the Company, quite sensibly in the arbitrator's eyes, requested and obtained a release from all other claims for pension benefits.

In this context, the arbitrator concluded that the grievances were not arbitrable and that he had no authority to resolve the merits of Bell's and Bokunewicz's claims.

## II.

Contrary to the majority, I believe the district court erred in disregarding the arbitrator's interpretation of paragraphs 4 and 5 of the closure agreement, to wit: that Purolator and the union, on behalf of Bell and Bokunewicz, *intended* by the closure agreement to waive and release claims for disability pension benefits.

The majority characterizes the arbitrator's interpretation of the closure agreement as dictum. It should be clear from the summary above that it was anything but dictum; it was essential to the award. The arbitrator indicated that the agreements should be interpreted to require arbitration unless arbitration were precluded by express provision or clear implication. In the arbitrator's view, the grievances were not arbitrable solely because paragraphs 4 and 5 of the closure agreement expressly precluded arbitration of Bell's and Bokunewicz's claims. In reaching this interpretation, the arbitrator necessarily rejected the union's arguments and determined that paragraphs 4 and 5 of the closure agreement were intended to waive Bell's and Bokunewicz's claims.

The district court was not free to disregard the arbitrator's interpretation of the closure agreement. Instead of deferring to the arbitrator's interpretation, the district court permitted Bell and Bokunewicz to submit evidence and arguments to the show that paragraphs 4 and 5 were never meant to apply to claims like Bell's and Bokunewicz's. These are the very arguments that were made to the arbitrator and rejected.

The district court, in effect, reviewed the arbitrator's interpretation of the closure agreement and substituted its own. It was simply without power to do so. The reasons for insulating arbitral decisions from judicial review are grounded in the federal statutes regulating labor-management relations. In particular, section 203(d) of the Labor Management Relations Act, 29 U.S.C. § 173(d) provides, "Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." *See also Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 566, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of an award. *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). "[S]o far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different than his." *Enterprise Wheel*, 363 U.S. at 599, 80 S.Ct. at 1362, 4 L.Ed.2d 1424 (1960); *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 764, 103

S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983). By developing its own interpretation of the closure agreement, the district court contradicted long-standing federal labor policy and precedent.

The majority's observation that the question of arbitrability is ordinarily for the courts makes little difference in this case. The Supreme Court has written, *"Unless the parties clearly and unmistakably provide otherwise,* the question of the whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Technologies v. Communications Workers,* 475 U.S. 643, 647, 106 S.Ct. 1415, 1417, 89 L.Ed.2d 648 (1986); *see also Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 583 n. 7, 80 S.Ct. 1347, 1353 n. 7, 4 L.Ed.2d 1409 (1960). In particular, we have held that a union does not exceed its authority by submitting the issue of arbitrability to voluntary arbitration instead of demanding resolution by a court. *Johnson v. United Food & Commercial Workers,* 828 F.2d 961, 966 (3d Cir.1987). Further, we have held that individual union members like Bell and Bokunewicz are bound by the outcome of such arbitration. *Id.* Here, the union and Purolator specifically agreed to have an arbitrator, and not a court, determine whether Bell's and Bokunewicz's grievances were arbitrable. That being so, the district court had no power to review the merits of the arbitrator's award and substitute its own interpretation of the closure agreement.

In addition to condoning the district court's erroneous review of the arbitrator's award, the majority gives a misleading impression of *Johnson v. United Food & Commercial Workers,* 828 F.2d 961 (3d Cir.1987). In *Johnson,* former employees of the Great Atlantic & Pacific Tea Company ("A & P") brought suit seeking severance pay under a collective agreement between labor and management. The district court dismissed the suit and we affirmed on appeal because an earlier arbitration award had conclusively determined that no such collective agreement existed. In the earlier proceeding, the union moved to arbitrate several grievances that arose when A & P shifted workers from full-time to part-time positions. A & P initially refused to arbitrate on the ground that no agreement was then in force, but finally agreed to arbitrate the issue of whether a collective agreement had existed during the grievance period. The arbitrator found that the union and A & P allowed their former collective bargaining agreement to expire without reaching agreement on a new one. The arbitrator concluded that the grievances before him were not arbitrable because no valid labor agreement existed under which the propriety of A & P's actions could be measured.[5]

It is not accurate to suggest, as the majority does, that the *Johnson* arbitrator found he "had jurisdiction" whereas the arbitrator here did not. Both arbitrators determined that the grievances before them were "not arbitrable," or that they lacked jurisdiction to resolve the grievances. Both arbitrators had the authority to decide the issue of arbitrability, however, since the parties in each case agreed to submit that issue. It is this determination that deserves the respect of the courts. The majority's attempt to distinguish *Johnson* on this basis is therefore incorrect.

Indeed, the similarity between *Johnson* and this case reinforces my argument here. In *Johnson,* as in the present case, the parties agreed to submit an issue to the arbitrator that ordinarily is for the courts to decide, to wit: whether a collective

---

**5.** The arbitrator's award at issue in *Johnson* is quoted in the earlier case, *United Food & Commercial Workers v. Great Atlantic & Pacific Tea Co.,* 734 F.2d 455 (3d Cir.1984):

There was never a valid Collective Bargaining Agreement in effect between the Company and the Union ... for the period from September 29, 1980 to October 1, 1983. The 1977–80 Agreement temporarily was extended during negotiations, but terminated on Octo-

ber 23, 1980. Any grievances that are predicated either, upon the draft of the proposed 1980–83 Labor Agreement or on the 1977–80 Labor Agreement, concerning events that occurred after October 23, 1980, *are not arbitrable* because no valid Labor Agreement exists under which the propriety of the Company's actions can be measured.

*United Food & Commercial Workers,* 734 F.2d at 457 n. 2 (emphasis added).

agreement existed. In deciding the grievances were not arbitrable, the arbitrator in *Johnson* necessarily determined that no collective agreement existed. The district court refused to review the merits of that determination and properly dismissed the suit. Similarly, the arbitrator's determination in our case that paragraphs 4 and 5 of the closure agreement waive and release Bell's and Bokunewicz's claims was essential to his decision; the district court should have refused to review the merits of that determination.

### III.

I nonetheless concur in the result the majority reaches. I agree that Bell's and Bokunewicz's rights to disability pensions were vested under the collective agreement. Once vested, those pension rights could not be altered without their consent. *See Allied Chem. & Alkali Workers, Local No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 398 n. 20, 30 L.Ed.2d 341 (1971). The arbitrator's interpretation of the closure agreement directly contradicts this principle and so is unenforceable as against public policy. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987).

In my view, the district court had no power to overrule the arbitrator's interpretation of the closure agreement simply because the district court thought its own interpretation was better. *Enterprise Wheel*, 363 U.S. at 596, 80 S.Ct. at 1360. In limited circumstances, however, a court may refuse to enforce an arbitrator's interpretation of a collective bargaining agreement that is illegal or contrary to public policy. *W.R. Grace & Co. v. Local Union 759, Int'l Union of Rubber Workers*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983); *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987). This principle is nothing more than a specific application of the more general doctrine, rooted in common law, that a court may refuse to enforce contracts that violate law

or public policy. The Supreme Court wrote:

> [A] court's refusal to enforce an arbitrator's *interpretation* of such contracts is limited to situations where the contract as interpreted would violate "some explicit public policy" that is "well-defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from some general considerations of supposed public interests.'"

*Misco*, 108 S.Ct. at 373.

Under established contract principles, vested pension rights may not be altered without the pensioner's consent. *Allied Chem. & Alkali Workers, Local No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 398, 30 L.Ed.2d 341 (1971); *see also Weimer v. Kurz–Kasch, Inc.*, 773 F.2d 669, 673 (6th Cir.1985); *Bowen v. Bunker Hill Co.*, 725 F.2d 1221, 1223 (9th Cir.1984); *cf. Elgin, Joliet & Eastern Ry. Co. v. Burley*, 325 U.S. 711, 744, 65 S.Ct. 1282, 1299, 89 L.Ed. 1886 (1945) (under the Railway Labor Act, union may only bargain for prospective benefits for members and has no power to make collective agreements that deprive employees of their individual rights). The arbitrator's interpretation of the closure agreement violates these clear precedents by allowing the union and Purolator to bargain away in the closure agreement vested rights of Bell and Bokunewicz in their disability pensions in exchange for increased pension benefits to other union members.

Accordingly, I would hold that the arbitrator's award, insofar as it allows Bell's and Bokunewicz's vested disability pension rights to be altered without their consent, is unenforceable as against public policy. As a consequence, the district court properly refused to give the arbitrator's award conclusive, or binding, effect. As to the remaining issues on appeal, I am in agreement with the majority that the district court did not err.