Donna J. PILIERI, Appellee,

v.

CONTINENTAL CASUALTY
COMPANY, Appellant.

Superior Court of Pennsylvania.

Submitted May 19, 1998.
Filed Sept. 24, 1998.
Reargument Denied Dec. 1, 1998.

Robert J. Stern, Philadelphia, for appellant.

Benedict A. Casey, Philadelphia, for appellee.

Before HUDOCK and STEVENS, JJ., and CIRILLO, President Judge Emeritus.

STEVENS, Judge:

This is an appeal from the judgment entered in the Court of Common Pleas of Philadelphia County awarding Appellee forty two thousand two hundred and eighty-nine dollars ($42,289.00), plus costs and attorney's fees, under her former employer's long-term group disability insurance policy. Herein, Appellant contends the following: (1) The trial court did not have subject matter jurisdiction over this case since Appellee failed to exhaust her administrative remedies; (2) The trial court did not have subject matter jurisdiction over this case since Appellee failed to join an indispensable party; (3) The trial court used an improper standard of review; (4) Appellant's termination of Appellee's benefits was not arbitrary and capricious; and (5) The trial court improperly awarded Appellee attorney's fees plus costs. We reverse the trial court's award of attorney's fees plus costs and remand for proceedings consistent with this decision. In all other respects, we affirm.

The relevant facts and procedural history are as follows: On January 2, 1992, Appellee filed a complaint against Appellant Continental Casualty Company alleging that Appellant breached its fiduciary duty under the terms of a long-term group disability policy issued to Appellee's former employer, American College of Radiology. The insurance policy covered full disability resulting from "off the job" accidents. In her complaint, Appellee claimed that on July 1, 1988, she was involved in an automobile accident and suffered serious injury as a result thereof. She further claimed that her injuries resulted in total disability and that, on September 29, 1988, her employment with the American College of Radiology ended.

Appellee submitted her claim to Appellant and received full and complete benefits for the period up to and including January of

1990. After January 29, 1990, Appellant refused to make any further payments under Appellee's policy since it believed that Appellee was no longer disabled.

Following a bench trial held on January 22, 1996, the trial court entered a verdict in favor of Appellee, thereby determining that Appellant's termination of Appellee's disability benefits was improper. On February 6, 1997, Appellant filed a post-verdict motion seeking judgment notwithstanding the verdict, which was denied by the trial court. On February 13, 1997, Appellee filed a post-trial motion seeking attorney's fees and costs, which was granted by the trial court. Following the entry of judgment, this appeal was filed.

Appellant's first claim is that the trial court did not have subject matter jurisdiction in this case since Appellee failed to exhaust her administrative remedies. Specifically, Appellant claims that under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, Appellee was required to seek internal review by Appellant before she was permitted to avail herself of civil court remedies. While we agree with Appellant's assertion that the policy at issue is governed by ERISA,[1] we disagree that the trial court lacked subject matter jurisdiction.

■ Under ERISA, every plan must provide an internal appeals process explaining the procedure by which a claimant has a reasonable opportunity to appeal a denied claim and under which a full and fair review of the claim and its denial may be obtained. 29 C.F.R. § 2560.503–1(f); 29 C.F.R. § 2560.503–1(g)(1). Except in limited circumstances, courts will not entertain an ERISA claim unless the claimant has exhausted all administrative remedies available under the respective plan or policy. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir.1990). *See Tatterson v. Koppers Company, Inc.*, 312 Pa.Super. 326, 458 A.2d 983 (Pa.Super.1983)

(exhaustion doctrine under ERISA applies in Pennsylvania).

Here, the only provision relating to the appeals process indicated that "[n]o action at law or in equity can be brought until after 60 days following the date written proof of loss was given. No action can be brought after 3 years from the date written proof is required." Exhibit A, Group Long-term Disability Insurance Plan p. J. A review of the record indicates that Appellee filed her suit after the sixty day time period had expired and that no other remedies were made available to Appellee in the plan. However, this does not end our inquiry.

Appellant contends that even if the ERISA plan itself failed to set forth an internal review procedure, letters sent to Appellee and her counsel were sufficient to notify Appellee of the insurer's internal appeal procedures, thereby requiring exhaustion thereof prior to filing a civil suit. To support this argument, Appellant refers to letters dated January 6, 1990, January 27, 1990, September 20, 1990, and December 19, 1991, which it sent to Appellee.

The June 6, 1990 letter indicated that Appellee's claim was denied, that Appellant needed medical documentation, and that Appellee had four weeks to contact Appellant's claims representative or her claim file would be closed. Appellee contacted the claims representative on June 18, 1990 and provided additional, medical information by telephone. By letter dated June 27, 1990, Appellee was informed that her file was closed since the claims representative determined that Appellee was no longer disabled. Thereafter, Appellee hired an attorney, who contacted Appellant. In response, Appellant generated its September 20, 1990 letter informing Appellee's counsel that if Appellee "wished to claim further disability, she needed to submit verification of continuing treatment and disability...." Exhibit T, Appellant's letter dated September 20, 1990 p. 1.

---

1. It is well settled that group disability insurance policies like the one at issue are ERISA insurance policies, and, therefore, the policy at issue is governed by federal common law. *Todd v. AIG Life Insurance Co.*, 47 F.3d 1448 (5th Cir. 1995); *McClure v. Life Insurance Co. of N. Am.*, 84 F.3d 1129 (9th Cir.1996). As such, state law does not control in this case; however, "in ascertaining the applicable federal common law, [state] courts may draw guidance from analogous state law." *Watson v. American Home Assurance Company*, 454 Pa.Super. 293, 685 A.2d 194, 199 (Pa.Super.1996).

Appellee's counsel then sent a physician's report to Appellant indicating that Appellee continued to be disabled during the time period at issue and that she was under the care of a physician. On December 19, 1991, Appellant denied Appellee's claim and informed her that "[i]f you are requesting a review, you must provide us [with] what we asked for previously. Any information which you care to submit must be received within the next 30 days." Exhibit U, Appellant's letter dated December 19, 1991 p. 1. Appellee subsequently filed the instant action in the Court of Common Pleas of Philadelphia County.

Assuming, *arguendo*, that Appellant was permitted to establish the required internal review procedures through the use of letters, we conclude that, with regard to the January 6, 1990, January 27, 1990, and September 20, 1990 letters, Appellee followed the procedures described therein. With regard to the December 19, 1991 letter, we conclude that resort to the procedure described therein would have been futile. As such, Appellee was not required to exhaust her administrative remedies. *Kimble v. International Brotherhood of Teamsters*, 826 F.Supp. 945 (E.D.Pa.1993).

■ In order to qualify for the futility exception and avoid the exhaustion requirement, Appellee was required to show that it was certain that her claim would have been denied if she followed the internal appeal procedure established in the December 19, 1991 letter and not merely that she doubted an appeal would change Appellant's decision. *Kimble, supra*. Here, the December 19, 1991 letter indicated that Appellee could obtain further review if she submitted "what was asked for previously" within thirty days. Presumably, Appellant was asking for medical verification of Appellee's continued treatment and disability. However, the record reveals that Appellee already provided "what was asked for previously" when she submitted her physician's report. That is, the record reveals that Appellee provided Appellant with medical information verifying her continued disability and treatment. Therefore, since Appellee *had* already submitted the requested medical verification and was still denied benefits, it would have been futile for her to comply with the December 19, 1991

letter. We note that the letter did not indicate that someone other than the claims representative who had previously handled Appellee's claim would be reviewing Appellee's case internally or that any specific information/documents was requested of Appellee. As such, we find that Appellee was not required to satisfy the exhaustion requirement. *See Berger v. Edgewater Steel Company*, 911 F.2d 911 (3d Cir.1990); *Wolfe v. J.C. Penney Company, Inc.*, 710 F.2d 388 (7th Cir.1983).

Appellant's next claim is that Appellee failed to join an indispensable party, and, therefore, the trial court did not have subject matter jurisdiction over this case. Specifically, Appellant contends that the Employee Benefit Plan and Appellee's former employer were proper party defendants in this action. As such, Appellant contends that it was improper for Appellee to only sue Appellant, the insurer. The trial court concluded that Appellant had complete control over the management and administration of the plan, and, therefore, the trial court concluded that Appellant was the only necessary party. We agree with the trial court's findings and conclusions of law.

■ Appellee's only causes of action are those provided by ERISA. "ERISA permits suits to recover benefits (1) only against the Plan as an entity, . . . and (2) suits for breach of fiduciary duty only against the fiduciary." *Gelardi v. Pertec Computer Corporation*, 761 F.2d 1323, 1324 (9th Cir.1985). *See Gibson v. Prudential Insurance Company of America*, 915 F.2d 414 (9th Cir.1990). Instantly, the trial court found, and the record reveals, that Appellee sued Appellant for breach of a fiduciary duty. Specifically, Appellee alleged that Appellant "improperly terminated [benefits] as a result of a wrongful breach." Appellee's Complaint filed 7/7/92 p. 4. "ERISA defines a fiduciary of a Plan as anyone who exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . [or] has any discretionary authority or discretionary responsibility in the administration of such plan." *Gelardi*, 761 F.2d at 1324.

It is undisputed that Appellant was a fiduciary since it had discretionary control over the disposition of claims, and, as such, Appellant does not dispute that it was a proper party defendant. At issue is whether Appellant was the *only* proper party defendant, that is, whether Appellee's failure to sue the Plan or her former employer resulted in the non-joinder of an indispensable party.[2]

 As stated previously, Appellee filed suit for breach of a fiduciary duty, and it is clear that the Plan was not a fiduciary. *See Gelardi, supra.* While Appellee could have pursued a separate theory of recovery against the Plan, she chose not to do so. As such, she was not required to name the Plan as a party defendant. Moreover, the record reveals that Appellee's former employer was not a fiduciary with respect to the administration and management of the Plan. Once the employer hired Appellant and gave it control over the Plan, the employer was no longer a fiduciary because it retained no discretionary control over Plan. In particular, the employer retained no authority over the disposition of claims. *Id.*; *Thornton v. Evans*, 692 F.2d 1064 (7th Cir.1982). As the trial court found, Appellant "had complete control over the 'claims process.'" Trial Court Opinion dated 10/24/97 p. 2. As such, Appellee's former employer was not an indispensable party.

Appellant's next contention is that the trial court used an incorrect standard of review in determining whether Appellant breached its fiduciary duty by denying Appellee disability benefits. Specifically, Appellant claims that it was the plan administrator, and, as such, the "arbitrary and capricious" standard of review was applicable. Appellant further claims that the trial court improperly used a *de novo* review, which was unduly favorable to Appellee.[3]

The record belies Appellant's claim that the trial court conducted a *de novo* review. Rather, the express language of the trial court's opinion indicates that the trial court found Appellant's termination of Appellee's

claim to be "arbitrary and capricious." Trial Court Opinion dated 10/24/97 p. 3. Clearly, the trial court used the standard of review suggested by Appellant, and, therefore, judgment notwithstanding the verdict is not warranted on this basis.

Appellant's next contention is that the trial court improperly determined that Appellant failed to satisfy its fiduciary duty under the Plan, since it arbitrarily and capriciously denied Appellee benefits. Assuming, *arguendo*, that the "arbitrary and capricious" standard is applicable in this case, we find that the trial court did not err.

 In reviewing Appellant's termination of Appellee's benefits under the "arbitrary and capricious" standard, the lower court and this Court are not to substitute their judgment for that of Appellant, the fiduciary/decision-maker. Rather, in the ERISA context, it has been stated that under the "arbitrary and capricious" standard, a fiduciary's interpretation of a plan will not be disturbed if it is reasonable, supported by substantial evidence, and proper as a matter of law. *Terry v. Bayer Corporation*, 145 F.3d 28 (1st Cir. 1998); *DeWitt v. Penn–Del Directory Corp.*, 106 F.3d 514 (3d Cir.1997); *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40 (3d Cir.1993). In deciding whether Appellant's interpretation of the policy was arbitrary and capricious, we review only the materials available to Appellant during the decision-making process. *Peruzzi v. Summa Medical Plan*, 137 F.3d 431 (6th Cir.1998).

Appellant indicates that it terminated Appellee's benefits under the Plan because Appellee allegedly failed to establish her continuing disability. Appellee was classified "totally disabled" and received monthly benefits under the Plan until January of 1990. Appellant then contacted Appellee on June 6, 1990, and indicated that it was terminating her benefits unless she could prove that she was "totally disabled" from January 29, 1990, until the then present time.

---

2. We note that Appellant has not alleged that any other party was indispensable. As such, we shall restrict our review as to whether the Plan or Appellee's former employer were indispensable parties.

3. In conducting a *de novo* review, the court "undertakes an independent review of the record and decides whether [the plaintiff] is 'disabled' within the meaning of the Plan." *Terry v. Bayer Corporation*, 145 F.3d 28, 34 (1st Cir.1998).

The Plan provides that once an insured has been classified as "totally disabled" and receives a monthly benefit under the Plan, she may continue to receive benefits only if she is: "(1) continuously unable to engage in any occupation for which [she] is or [will] become qualified by education, training or experience; and (2) under the regular care of a licensed physician other than [herself]." Exhibit A, Group Long–Term Disability Insurance Policy p. F.

■ In determining whether Appellee continued to be unable to engage in her occupation, Appellant had before it James Hunter, M.D.'s report dated October 22, 1991. In his report, Dr. Hunter explicitly stated that Appellee was unable to perform her job duties from January of 1990 to October of 1991 due to the original injury for which she received benefits under the Plan. Appellant had before it no evidence contradicting Dr. Hunter's report when it determined that Appellee was able to perform her job duties. Also, we note that Appellee requested that Appellant perform an independent medical examination if Appellant found Appellee's claim of continued disability to be incredible. As such, Appellant's conclusion that Appellee failed to prove that she was unable to perform her job duties was arbitrary and capricious.

With regard to the requirement that Appellee prove that she was "under the regular care of a licensed physician," a phrase not defined by the Plan, Dr. Hunter indicated in his letter that Appellee had a relatively major surgery in December of 1989 and that he examined Appellee on December 19, 1989, just weeks prior to the termination of Appellee's benefits. Also, from December of 1989 to June of 1990, under the advice and direction of Dr. Hunter, Appellee received physical therapy three times a week, and she underwent various tests, including an MRI. Moreover, although Appellee was not personally examined by Dr. Hunter from January of 1990 to June of 1990, Appellee indicated that she was in contact with the doctor regarding her injury and that she had previously made a follow-up appointment to see Dr. Hunter in September of 1990. As such, it was unreasonable for Appellant to conclude that Appellee was not "under the regular care of a licensed physician," and, as such, we agree with the trial court's conclusion that

Appellant breached its fiduciary duties by acting arbitrarily and capriciously in denying Appellee continued benefits under the Plan.

■ Appellant further claims that Appellee was denied benefits because she failed to provide Appellant with a written proof of loss within ninety days after her benefits were terminated in January of 1990. As Appellant correctly asserts, the Plan provides that "[w]ritten proof of loss must be furnished to [the insurer] within 90 days after the end of a period for which [the insurer] is liable." Exhibit A, Group Long-term Disability Insurance Plan p. I. Appellant also correctly asserts that Appellee failed to provide Appellant with a written proof of loss within ninety days after her benefits were terminated. However, we find that Appellant has waived this issue since it was raised for the first time on appeal. Appellant failed to raise this issue pre-trial, at trial or in post-trial motions. Also, it is clear that in denying Appellee's claim, Appellant never indicated that the claim was being denied because Appellee failed to file a written proof of loss within ninety days. As such, we find that judgment notwithstanding the verdict is not warranted on this basis.

Appellant's final contention is that the trial court abused its discretion in awarding Appellee attorney's fees and costs pursuant to 29 U.S.C. § 1132(g). Specifically, Appellant contends that the trial court failed to analyze the five-step test developed by the federal courts for the award of attorney's fees under Section 1132. We agree and find it necessary to remand as to this issue.

■ 29 U.S.C. § 1132(g)(1) provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party," but does not automatically mandate an award to a prevailing party. *Monkelis v. Mobay Chemical*, 827 F.2d 935, 937 (3d Cir.1987). In determining whether attorney's fees are proper under Section 1132(g)(1), the court must consider a five-factor test. *Anthuis v. Colt Industries Operating Corporation*, 971 F.2d 999 (3d Cir. 1992); *Monkelis, supra* ; *Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir.1983). Specifically, the court must consider:

(1) the offending parties' culpability or bad faith;

(2) the ability of the offending parties to satisfy an award of attorney's fees;

(3) the deterrent effect of an award of attorney's fees against the offending party;

(4) the benefit conferred on members of the plan as a whole; and

(5) the relative merits of the parties' positions.

*Anthuis,* 971 F.2d at 1010–1011 (*citing Ursic, supra* ). *See McPherson v. Employees' Pension Plan of American Re–Insurance Company, Inc.,* 33 F.3d 253 (3d Cir.1994); *Schake v. Colt Industries Operating Corp. Severance Plan,* 960 F.2d 1187 (3d Cir.1992); *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446 (9th Cir.1980). Where a court fails to consider these five factors, it is proper to remand to permit the trial court an opportunity to do so. *Anthuis, supra* ; *Schake, supra* ; *Hummell, supra.* In reviewing the trial court's award of attorney's fees, we must determine whether it abused its discretion. *McPherson, supra.* However, "[o]ur review of the legal standards a [trial] court applies in the exercise of its discretion is ... plenary." *Id.* at 256.

▇▇▇ In the case *sub judice,* the trial court awarded Appellee attorney's fees because Appellee established that she was entitled to additional benefits under the Plan since Appellant failed to notify her properly of the claims process and Appellant failed to comply with ERISA's requirements regarding the establishment of a Plan. Trial Court Opinion filed 10/24/97 p. 4. In other words, the trial court considered the relative merits of the parties' positions, which is prong five of the applicable test. However, the trial court failed to consider or discuss any of the other prongs established by the federal courts. As such, we find it necessary to remand this case on the issue of attorney's

fees. *Anthuis, supra* (holding that is mandatory for the lower court to analyze *all* of the factors and its failure to do so requires a remand; the appellate courts are not permitted to undertake an independent review to determine whether the five prongs have been met).

We note that the trial court indicated in its opinion that in awarding attorney's fees the court was required to consider only whether Appellee was "successful on any issue which achieved the result sought." Trial Court Opinion filed 510/24/97 p. 4. To support this assertion, the trial court cited *Kay v. Thrift and Profit Sharing Plan for Employees of Boyertown Casket Co.,* 780 F.Supp. 1447 (E.D.Pa.1991). While *Kay* states that "[a]s a general rule, ERISA plaintiffs are entitled to attorney's fees and costs if they succeed on any significant issue which achieves any of the relief sought," the case also explicitly states that a trial court must consider the five factors enunciated previously in determining attorney's fees under ERISA. *Kay,* 780 F.Supp. at 1462. In fact, the United States Eastern District Court of Pennsylvania remanded the case requesting the parties to provide information regarding the five-steps.[4]

Affirmed in part; reversed in part and remanded for proceedings consistent with this decision; jurisdiction relinquished.

---

4. Appellant alleges that Appellee is not entitled to attorney's fees under Section 1132(g) since she "did not seek to state an ERISA claim, relies on other grounds for relief, and does not name as a party to the action the Plan or her employer." Appellant's Brief p. 35. To support its contention, Appellant cites to *Bokunewicz v. Purolator Products, Inc.,* 907 F.2d 1396 (3d Cir.1990). While we acknowledge that *Bokunewicz* permits the denial of attorney's fees where the plaintiff fails to state a pure ERISA claim, relies on other grounds for relief, and fails to name indispensable parties, such was not the case here. As discussed previously, Appellee sought recovery for Appellant's breach of its fiduciary duties with regard to a long-term disability plan. As such, her claim was a pure ERISA claim; there is no indication that she sought relief on any other ground. Also, as discussed previously, Appellee was not required to name either the Plan or her former employer as a party defendant. As such, attorney's fees cannot be denied on this ground.