J-A05011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF: STEPHEN T. GALLAGHER, DECEASED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: JOSEPH A. HALLMAN | : | No. 1125 EDA 2014 |

Appeal from the Decree March 5, 2014
In the Court of Common Pleas of Philadelphia County
Orphans' Court at No(s): O.C. No. 891 DE OF 2011

BEFORE:  GANTMAN, P.J., SHOGAN, J., and ALLEN, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED JULY 23, 2015**

Appellant, Joseph A. Hallman, appeals from the decree entered in the Philadelphia County Court of Common Pleas, which granted summary judgment in favor of Appellees Michael J. Gallagher, Jr., Administrator of the Estate of Stephen T. Gallagher, Joann P. Gallagher, and Michael J. Gallagher, Sr. (collectively "Gallagher Appellees"), and denied Appellant's cross-claim against Appellee Aetna Life Insurance Company ("Aetna").  We affirm in part, reverse in part, and remand for further proceedings.

The relevant facts and procedural history of this case are as follows. In April 2003, the University of Pennsylvania ("Penn") contracted with Aetna to provide group life insurance coverage to Penn employees.  Stephen T. Gallagher ("Decedent") became a Penn employee in September 2003 and purchased two Aetna life insurance policies through the Penn Health & Welfare Program group coverage plan, GP-811778 ("Plan").   The Plan

provided in relevant part as follows:

**Beneficiaries**

You may name or change your beneficiary by filing [a] written request at your Employer's headquarters or at Aetna's Home Office. Ask your Employer for the Forms. The naming or any change will take effect as of the date you execute the request. Aetna will be fully discharged of its duties as to any payment made by it before your request is received at its Home Office.

Any amount payable to a beneficiary will be paid to those you name. Unless you state to the contrary, if more than one beneficiary is named, they will share on equal terms.

*    *    *

If no named beneficiary survives you or if no beneficiary has been named, payment will be made as follows to those who survive you:

- Your spouse, if any.
- If there is no spouse, in equal shares to your children.
- If there is no spouse or child, to your parents, equally or to the survivor.
- If there is no spouse, child, or parent, in equal shares to your brothers and sisters.
- If none of the above survives, to your executors or administrators.

(Exhibit 10 of the Gallagher Appellees' Motion for Summary Judgment, filed 4/25/13; R.R. at 192b-193b). ADP, Inc. administered the Plan and its online database, Enterprise.

Decedent and Appellant were in a relationship and began to live together in early 2005. In May 2005, they executed a lease addendum which added Appellant to Decedent's lease. Decedent and Appellant subsequently moved into a house they jointly owned and took out a

mortgage. They registered as same-sex domestic partners with Penn on January 26, 2006. At some point following that registration, Decedent added Appellant as a dependent under Decedent's medical insurance.

Decedent and Appellant separated in late 2008 or early 2009, at which point Appellant moved out of their jointly-owned home. Appellant continued to stay in touch with Decedent after the separation. For example, Appellant states he cared for Decedent's dogs while Decedent was on an international business trip and drove Decedent home from the hospital after Decedent had outpatient surgery. On December 3, 2008, however, Decedent removed Appellant from Decedent's medical insurance coverage. On that same date, Decedent also electronically added Appellee Joann Gallagher as his contingent life insurance beneficiary under the Plan. Decedent made no change to his primary life insurance beneficiary at that time. Decedent died on May 27, 2011.

Upon Decedent's death, Appellant became sole owner of the jointly-owned house subject to a substantial mortgage. Decedent's life insurance policies were payable at a combined value of $354,000.00. Aetna received information from ADP identifying Appellant as Decedent's primary life insurance beneficiary. On May 31, 2011, Aetna received separate death claims from Appellant and from Decedent's brother, Appellee Michael J. Gallagher, Jr. On June 24, 2011, Appellee Michael Gallagher, Jr., in his capacity as administrator of Decedent's estate, filed a petition for citation

against Appellant and Aetna, which sought an award to the estate of the benefits under Decedent's life insurance policies. The Orphans' court initially denied the petition on July 6, 2011. Appellee Michael Gallagher, Jr. filed exceptions on July 26, 2011. On July 29, 2011 the court vacated the July 6, 2011 decree and issued a citation directing Appellant and Aetna to show cause why the court should not grant the relief requested in the petition for citation.

On September 20, 2011, Aetna filed a petition for interpleader of the proceeds of Decedent's life insurance benefits. Appellant filed a motion for summary judgment on March 30, 2012. Appellee Michael Gallagher, Jr. filed a petition for leave to file a substituted petition for citation on April 4, 2012. On July 17, 2012, the court denied Appellant's summary judgment motion, granted Appellee Michael Gallagher, Jr.'s request to file a substituted petition, and denied Aetna's interpleader petition. The Gallagher Appellees filed an amended petition for citation on July 31, 2012.[1] On August 21, 2012, Appellant filed an answer and a cross-claim against Aetna for failure to pay out Decedent's life insurance benefits to Appellant.

The Gallagher Appellees filed a motion for summary judgment against

---

[1] Decedent's parents, Appellees Joann P. Gallagher and Michael J. Gallagher, Sr., joined in the amended petition. The petition sought the award of Decedent's life insurance benefits to his parents as default beneficiaries under the Plan, or to Appellee Joann Gallagher individually. In the alternative, the petition sought to impose a constructive trust on any benefits paid to Appellant to preserve the benefits during the litigation, so the benefits could be transferred to Decedent's parents.

- 4 -

Appellant on April 25, 2013. On April 26, 2013, Appellant filed a cross-motion for summary judgment against the Gallagher Appellees, and a motion for summary judgment against Aetna on the cross-claim. On March 5, 2014, the court denied Appellant's cross-motion for summary judgment; granted summary judgment in favor of the Gallagher Appellees; denied Appellant's cross-claim against Aetna; and awarded the proceeds of Decedent's life insurance policies under the Plan to Appellees Joann Gallagher and Michael Gallagher, Sr., pursuant to the default provisions of the Plan. Appellant filed a timely notice of appeal on April 1, 2014. The court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); and Appellant filed none.

Appellant raises the following issues for our review:

> DID THE [ORPHANS'] COURT ERR AS A MATTER OF LAW AND/OR ABUSE[] ITS DISCRETION BY ENTERING SUMMARY JUDGMENT IN FAVOR OF THE [GALLAGHER APPELLEES]…AND AGAINST APPELLANT BY:
>
> > DETERMINING THAT AS A MATTER OF LAW THE ELECTRONIC LIFE INSURANCE BENEFICIARY DESIGNATIONS UTILIZED BY [PENN] AND ACCEPTED BY AETNA…, NAMING [APPELLANT] AS THE PRIMARY BENEFICIARY OF TWO POLICIES TOTALING $354,000.00, WERE INVALID;
> >
> > DISREGARDING COMPETENT EVIDENCE IN THE FORM OF SCREEN SHOTS OF THE COMPUTER RECORDS WHICH SHOW UNEQUIVOCALLY THAT THE LIFE INSURANCE BENEFICIARY DESIGNATION OF [DECEDENT], NAMING [APPELLANT] AS THE PRIMARY BENEFICIARY WAS INVALID;
> >
> > DETERMINING THAT THE ELECTRONIC

DESIGNATION OF LIFE INSURANCE BENEFICIARY IS A "PROGRAM MODALITY BY DEFAULT" AND RELYING UPON…THE HEARSAY LETTER DATED MARCH 8, 2012 FROM HELEN C. LOGAN; AND

DETERMINING THAT [APPELLANT] IS NOT ENTITLED TO LEGAL FEES AND COSTS UNDER ERISA PURSUANT TO 29 U.S.C. § 1132(a)(1)(B) FOR AETNA'S REFUSAL TO PAY THE LIFE INSURANCE PROCEEDS TO THE DESIGNATED PRIMARY BENEFICIARY.

(Appellant's Brief at 3).

In his sub-issues one through three, Appellant argues Aetna and Penn's records established Appellant was named as primary beneficiary under Decedent's life insurance policies when Decedent died. Appellant contends Penn's screen shots of information in the Enterprise system, which constituted Aetna's official record of beneficiary information, unequivocally identified Appellant as primary beneficiary. Appellant asserts the Gallagher Appellees failed to present evidence indicating Decedent named anyone other than Appellant as primary beneficiary or that the designation was somehow improper. Appellant insists he had no obligation to produce a paper form that Decedent had originally submitted to name Appellant as primary beneficiary. Appellant claims the Plan permitted electronic designation of beneficiaries as early as 2006, and ever since then. In support, Appellant states the language from the 2010 Aetna Plan Summary, which provided the policyholder "may" name or change a beneficiary via written request, was optional not mandatory. Appellant further contends the

court improperly relied on a letter from Penn's Office of General Counsel, which suggested Appellant had somehow been "inadvertently" designated as a primary beneficiary by default when Decedent added Appellant to Decedent's medical insurance coverage. Appellant asserts this letter is hearsay and speculation. For these reasons, Appellant concludes this Court should reverse the summary judgment entered in favor of the Gallagher Appellees and enter judgment in favor of Appellant or, alternatively, remand for trial. We agree with Appellant that summary judgment on this issue was in error.

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. *Mee v. Safeco Ins. Co. of Am.*, 908 A.2d 344, 347 (Pa.Super. 2006). Our scope of review is plenary. *Pappas v. Asbel*, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied*, 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002). In reviewing a trial court's grant of summary judgment,

> [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

- 7 -

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court will disturb the trial court's order only upon an error of law or an abuse of discretion.

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Chenot v. A.P. Green Services, Inc.*, 895 A.2d 55, 61 (Pa.Super. 2006)

(internal citations and quotation marks omitted).

The Employee Retirement Income Security Act[2] ("ERISA") governs "any employee benefit plan if the plan is established or maintained by any

---

[2] 29 U.S.C.A. §§ 1001-1461.

- 8 -

employer engaged in commerce or in any industry or activity affecting commerce." ***Tatterson v. Koppers Co.***, 458 A.2d 983, 985 (Pa.Super. 1983) (citing 29 U.S.C.A. § 1003(a)(1)). "Under ERISA, plan administrators and fiduciaries are required 'to discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries,… **in accordance with the documents and instruments governing the plan**….'" ***In re Estate of Sauers***, 613 Pa. 186, 205, 32 A.3d 1241, 1253 (2011) (quoting 29 U.S.C.A. § 1104(a)(1)(D)) (emphasis in original).

Instantly, the Orphans' court reasoned as follows:

> Based on the record presented, and in particular the documents and instruments governing the plan, [Appellant] has failed to sustain his burden of establishing that he was designated by [Decedent] as a beneficiary under the procedures established by [the Plan]. The relevant provisions of that "Your Group Plan" sponsored by the University of Pennsylvania require a specific designation of a beneficiary as follows:

> > **Beneficiaries**

> > You may name or change your beneficiary by filing written request at your Employer's headquarters or at Aetna's Home Office. Ask your Employer for the Forms. The naming or any change will take effect as of the date you execute the request. Aetna will be fully discharged of its duties as to any payment made by it before your request is received at its Home Office.

> > Any amount payable to a beneficiary will be paid to those you name. Unless you state to the contrary, if more than one beneficiary is named, they will share on equal terms.

> > \* \* \*

> If no named beneficiary survives you or if no beneficiary has been named, payment will be made as follows to those who survive you:
>
> - Your spouse, if any.
> - If there is no spouse, in equal shares to your children.
> - If there is no spouse or child, to your parents, equally, or to the survivor.

Throughout the long pendency of this dispute, [Appellant] has failed to present any designation—written or electronic—of a beneficiary selected by [Decedent] in compliance with the relevant procedures set forth in the Aetna policy. Instead, [Appellant] relies on 2 sets of computer screen shots, one produced by Penn and the other by Aetna…. These documents, however, are merely post-mortem records reflecting Penn and Aetna's computer files, which, the record demonstrates, were dependent on information received from ADP. This is made clear in Aetna's response to [Appellant's] first set of interrogatories[,] which he presents in support of his summary judgment [motion]. When asked if it maintains "a record of the primary beneficiary for life insurance policies and coverage provided to [Decedent] under the [Plan]," Aetna replied:

> Aetna does not maintain (*i.e.* store) historical information or records of beneficiary designations made by [Decedent]. Aetna has access only to current beneficiary designations which it receives through a file feed from ADP, the Plan Sponsor's contracted vendor for administration of the technical aspects of the Plan.

The deposition testimony [Appellant] relies on to support his summary judgment motion likewise admits a lack of knowledge and deferral to ADP. The deposition of Geraldine Zima, Manager of Benefits Administration for Penn, is illustrative. In her deposition, Ms. Zima repeatedly emphasizes her limited knowledge of the procedures and information stored by ADP for life insurance beneficiaries. For instance, when she was asked

to interpret the three screenshots produced by Penn regarding [Decedent's] designation of life insurance beneficiaries and more specifically "what information does this screenshot tell you about the beneficiary designation of [Decedent's] life insurance policy," Ms. Zima candidly replied: "You would have to talk to ADP about that. I don't use this screen that much. I'm not familiar enough with it." To her knowledge, these 3 screen shots constitute the entire and only record of the beneficiaries of [Decedent's] life insurance. They were stored electronically in ADP's Enterprise System and then [sent] directly to Aetna.

In addition to this dearth in background information about the Penn and Aetna screenshots, [Appellant's] summary judgment [motion] is undermined by the internal contradictions between these documents. While the Aetna screenshot gives an effective date for the beneficiary designation of [Appellant] of "7/1/10,["] Ms. Zima was asked to explain the Penn screenshot's effective date of "12/3/08." At first she deferred, stating "You would have to ask ADP how to read that," but then offered her opinion that [Appellant] had been named a beneficiary before 12/3/08. This conjecture, however, is unsupported by any hard evidence. When specifically asked whether there was "any writing signed by [Decedent] designating [Appellant] as primary beneficiary that you have seen or have knowledge," [Ms. Zima] replied: "I haven't seen any paper" nor was she aware of "any document signed by [Decedent] designating [Appellant] as primary beneficiary." Aetna likewise stated that it had never received any electronic signatures by [Decedent] and the "computer documents do not show when a designation was made. Aetna's records show online designation as of 7/01/10 of [Appellant]."

There is no dispute that [Decedent] had named [Appellant] as beneficiary of his medical insurance or that he subsequently removed him in December 2008. In the dearth of a clear electronic or written beneficiary designation for [Decedent's] life insurance, Ms. Zima was asked to speculate on how [Appellant's] name came to appear as a beneficiary. In response, she suggests a computer default:

Q: Well, isn't that in contradiction of your statement that [Decedent] elected—isn't this statement saying that he elected to give medical benefits to [Appellant], and that the Enterprise system, through some programming—some programming modality by default named [Appellant] in the life insurance beneficiary field?

A: It did not name him. It populated the name field. There was no designation as to primary or contingent. It was up to the employee to make that election or change it.

This suggestion that [Appellant's] name appears on the computer printouts by default contravenes the explicit terms of the insurance policy requiring a designation by the insured as to his life insurance beneficiary. The lack of any evidence of beneficiary designation is fatal to [Appellant's] claim. Although he counters that the [Gallagher Appellees have] never produced any documentation of a different beneficiary designation, to maintain [their] burden of proof, the [Gallagher Appellees] do not have to do this. Under the explicit terms of [the] policy or plan, if the insured fails to designate a beneficiary, there is a default provision clearly mapped out. Under that default provision, the [Gallagher Appellees] prevail[] and the benefits should be awarded to the parents of [Decedent].

The other documents offered by [Appellant] to support his claim are irrelevant. The 2006 Amendment to the Master Services agreement between Penn and ADP as well as the Contract between Aetna and Penn effective April 1, 2006 concerning ADP's management of data merely define the relationship among these parties but were not incorporated into the Plan applicable to [Decedent]. The plan summaries that [Appellant] presented likewise were irrelevant to determination of the designated beneficiary but ironically those summaries would not have found computer screen shots sufficient to designate a beneficiary. The Summary Plan Description as of July 2006, for instance, provides at page 38 as follows:

**Enrollment and Beneficiary Designation**

> When you enroll for coverage you complete an enrollment form and name a beneficiary to receive benefits in case of your death. You may name anyone as your beneficiary and can change your beneficiary at any time via the online enrollment system at www.upenn.edu/u@penn.

No enrollment form, in paper or in electronic form, has been provided. The computer screen shots presented by Aetna as well as the screenshots and the touch logs produced by Penn as explained by Geraldine Zima in her deposition seriously contradict each other.

Alternatively, the [Gallagher Appellees have] sustained [their] burden of showing that there was no designation of a beneficiary of [Decedent's] life insurance policy under the terms of the relevant insurance policy. Normally, the [Gallagher Appellees] would have faced a daunting task in trying to establish this "negative." [They were] assisted, ironically, by the failure of [Appellant] to present any documentation—electronic or otherwise—that he had been designated by [Decedent] as his life insurance beneficiary under the terms of the policy that the [Gallagher Appellees] presented as Ex. 10 in support of [their] summary judgment motion. The deposition testimony by Geraldine Zima, as previously analyzed, revealed that she was unaware of any designation of a beneficiary other than the three screen shots. At one point, in fact, she hypothesized that [Appellant's] name had appeared as a life insurance beneficiary by computer default. The letter exchange the [Gallagher Appellees] presented with Helen C. Logan, Administrator of Legal Services at Penn's [O]ffice of the General Counsel likewise buttresses Ms. Zima's suppositions. When asked whether [Penn] had a document designating [Appellant] as a beneficiary of [Decedent's] life insurance—either on paper or electronically, Ms. Logan responded by letter dated March 8, 2012[:]

> Penn refers questions about the ADP process to ADP, but it is Penn's understanding that having just added [Appellant] to [Decedent's] medical insurance as a domestic partner, [Decedent's] screen defaulted to [Appellant's] name in the life insurance beneficiary

> field. One can simply erase the default name and type in another.
>
> Designation of a life insurance beneficiary by computer default is not an alternative to the personal selection of a life insurance beneficiary under [the Plan] that the [Gallagher Appellees] rel[y] upon in seeking summary judgment. While it is conceivable—though far from certain—that such a personal designation might be found among ADP's documents, [Appellant] failed to pursue that route. In fact, [Appellant] does not seek to raise that argument in the present summary judgment. Moreover, the period for discovery is over. There is therefore no issue of fact nor one for trial. The [Gallagher Appellees have] met [their] burden of proof that no designated beneficiary can be proven, so that the default provisions of the insurance policy intended for such instances should be invoked.

(Orphans' Court Opinion, filed March 5, 2014, at 12-16). We cannot fully agree with the court's analysis for the following reasons.

Decedent took out life insurance policies under the Plan in 2003. As early as 2006, Decedent had a personal key and password he could use to log into the Enterprise database. Once in the system, Decedent was able to name or change his primary and contingent life insurance beneficiaries. Decedent could also submit a paper beneficiary designation form to Penn or Aetna. In either case, current beneficiary information was stored in Enterprise. Ms. Zima stated during her deposition that the information in Enterprise constituted Penn's official and entire record of the beneficiaries for Decedent's life insurance policies. Screen shots of Decedent's record in Enterprise taken after his death displayed Appellant's name as the primary beneficiary for Decedent's life insurance policies. Both Penn and Aetna

produced these screen shots. Ms. Zima testified the Penn screen shots were received from ADP, which administers Enterprise. Likewise, in answers to interrogatories, Aetna stated it has access only to current beneficiary designations, and it receives this information in an electronic file feed from ADP. Aetna confirmed that the file feed it received from ADP listed Appellant as the primary beneficiary for Decedent's life insurance policies.

The "touch logs" of Decedent's activity in Enterprise show no electronic designation of a primary life insurance beneficiary, which might suggest the designation was done on paper. Nevertheless, the absence of a paper form signed by Decedent, naming Appellant as primary beneficiary, is not automatically fatal to Appellant's case. Aetna stated it stores no historical information or records of beneficiary designations. The up-to-date beneficiary information in the screen shots, however, suggests Decedent named Appellant as the primary beneficiary for the life insurance policies at some point in the past. Furthermore, the touch logs of Decedent's activity in Enterprise showed he logged into the system in December 2008 to add Appellee Joann Gallagher as a contingent life insurance beneficiary,[3] and to remove Appellant from medical coverage. Ms. Zima testified that it was her understanding Appellant was already designated as Decedent's primary life insurance beneficiary at that time. According to the touch logs, however,

---

[3] In Enterprise, Joann Gallagher's name is misspelled as "Joan Gallagher" and her birthdate is incorrect, but the parties do not dispute that the entry is intended to refer to Decedent's mother, Appellee Joann Gallagher.

Decedent did not alter, change or remove Appellant as the primary beneficiary then or at any other time that Decedent logged into Enterprise. The Gallagher Appellees' assertion, that designating a medical dependent in Enterprise can automatically populate the primary life insurance beneficiary field with the same name, fails to establish what actually occurred in this case and is conjecture at this point.

Viewing the evidence in the light most favorable to Appellant, as the nonmoving party in the Gallagher Appellees' motion for summary judgment, we conclude a genuine issue of material fact exists as to whether Decedent designated Appellant primary beneficiary of Decedent's life insurance policies. **See Chenot, supra**. At the summary judgment stage, any doubts concerning the reason Appellant is listed as Decedent's primary beneficiary in Enterprise must be resolved in Appellant's favor as the nonmoving party. **See id.** Summary judgment for either party would be inappropriate at this juncture in light of the conflicting claims regarding the identity of the primary beneficiary of the life insurance policies. The factfinder should have an opportunity to resolve this issue, which includes any questions regarding alleged inaccuracies in the screen shots as well as the knowledge and credibility of the witnesses.[4]

---

[4] Likewise, the Gallagher Appellees' objection to the screen shots as unauthenticated is properly an issue for trial. Assuming without deciding the touch logs and Ms. Zima's deposition testimony were insufficient to authenticate the screen shots, Appellant should have an opportunity to present testimony or other authentication evidence if the case proceeds to

In his fourth sub-issue, Appellant argues Aetna failed to comply with ERISA when it deferred action on Appellant's claim for Decedent's life insurance benefits. Appellant contends Aetna's decision to file an interpleader petition, rather than approve Appellant's claim, was unsupported by substantial evidence. Appellant asserts that even if Aetna acted reasonably when it filed the interpleader petition, it unjustifiably ignored evidence (including the screen shots) that subsequently became available. Appellant concludes Aetna breached its fiduciary duty under ERISA when it continuously refused to pay Decedent's life insurance benefits to Appellant, the designated primary beneficiary. We cannot agree.

Section 1132 of ERISA provides in relevant part as follows:

**§ 1132. Civil enforcement**

(a) Persons empowered to bring a civil action

A civil action may be brought—

    **(1)** by a participant or beneficiary—

*　　*　　*

---

trial. Additionally, the Gallagher Appellees' "best evidence rule" objection misconstrues the evidentiary purpose of the screen shots, which was to show Decedent's act of naming Appellant as a primary life insurance beneficiary. *See* Pa.R.E. 1002 (stating: "An original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise") and *Comment* (stating "writings are not usually treated as subject to the rule if they are only evidence of the transaction, thing or event"). Rule 1002 did not require Appellant to produce the original beneficiary designation form, which would only be additional evidence of this "event." *See id.*

> **(B)** to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

> \* \* \*

29 U.S.C.A. § 1132(a)(1)(B). "Under Section 1132…plan administrators are subject to federal liability should a court find they acted in an arbitrary and capricious manner by interpreting an ERISA plan document in a manner which is improper as a matter of federal law." *Estate of Sauers, supra* at 210, 32 A.3d at 1256. "In deciding whether a fiduciary's interpretation was arbitrary and capricious, we review only the materials available to [the fiduciary] during the decision-making process." *Pilieri v. Cont'l Cas. Co.*, 718 A.2d 1255, 1259 (Pa.Super. 1998). "[U]nder the 'arbitrary and capricious' standard, a fiduciary's interpretation of a plan will not be disturbed if it is reasonable, supported by substantial evidence, and proper as a matter of law." *Id.* "A decision is supported by substantial evidence if there is sufficient evidence for a reasonable person to agree with the decision." *Courson v. Bert Bell NFL Player Ret. Plan*, 214 F.3d 136, 142 (3d Cir. 2000).

Instantly, Decedent died on May 27, 2011. On May 31, 2011, Aetna received separate claims to Decedent's life insurance benefits from Appellant and Appellee Michael Gallagher, Jr. On June 1, 2011, after Aetna accessed records showing Appellant was the named primary beneficiary, Aetna sent Appellant a letter acknowledging receipt of his life insurance claim and

requesting a copy of Decedent's certified death certificate in order to process the claim. During the ensuing two weeks, Aetna received numerous telephone calls from members of Decedent's family seeking information regarding Decedent's designated life insurance beneficiary. Decedent's sister believed her mother was the beneficiary. Aetna received an email from Penn on June 14, 2011, while Appellant's claim remained on hold pending Aetna's receipt of the death certificate. That email indicated Decedent's family might contest the beneficiary designation. On June 17, 2011, Appellee Michael Gallagher, Jr. sent a letter to Aetna contesting the beneficiary designation. The letter stated in part:

> Aetna has informed the family that an online change of beneficiary was made in July of 2010. [Decedent's] relationship with [Appellant] ended approximately four years ago. [Appellant] expressed (in writing) his desire to be removed from [Decedent's] life. Having [Appellant] listed as [Decedent's] beneficiary is contradictory to [Decedent's] intentions, statements, direction and efforts.
>
> \*   \*   \*
>
> [D]uring the past several months, [Decedent] made many statements to several individuals that Joann Gallagher is the primary beneficiary of his life insurance. We also believe there is written evidence of such.
>
> As Administrator of the Estate, I am writing to determine what change was made in July, what the policy was before the change, and where the change originated from. It is possible [Appellant] knew [Decedent's] login user name and password.
>
> I am also writing to ask if Aetna will accept a written statement, made by [Decedent] in the recent time before his death, [in] which Joann Gallagher is designated as

- 19 -

primary beneficiary? Additionally, will Aetna accept sworn and certified affidavits by [Decedent's] attending professionals and health care providers asserting [Decedent] intended and believed Joann Gallagher was the primary beneficiary? Lastly, will Aetna accept a written statement from me, as Power of Attorney, and made while [Decedent] was alive, designating Joann Gallagher as beneficiary?

(Appendix to Aetna's Opposition to Appellant's Motion for Summary Judgment, filed 5/29/13; R.R. at 523a-524a). On June 24, 2011, Aetna received a copy of the petition for citation against Appellant and Aetna, which sought the award of Decedent's life insurance benefits to Appellee Michael Gallagher, Jr., as administrator of Decedent's estate. Appellant provided Aetna with a copy of Decedent's death certificate on July 6, 2011. Aetna proceeded to investigate the claim. Aetna discovered, *inter alia*, Decedent and Appellant had separated in 2009, and Decedent had removed Appellant as a medical dependent around that time. On July 27, 2011, the Orphans' court issued a decree directing Appellant and Aetna to show cause why Appellee Michael Gallagher Jr.'s petition for citation should not be granted. In September 2011, Aetna filed its petition for interpleader and a response to the petition for citation.

Under the circumstances, Aetna acted reasonably when it decided to interplead Decedent's life insurance benefits. Aetna was faced with competing claims to the benefits, and the issue was hotly contested. Even after Appellant produced the Enterprise screen shots, the case continued and genuine factual disputes remain regarding the identity of Decedent's primary

life insurance beneficiary. Aetna's decision to defer payment on the competing life insurance claims pending the outcome of the litigation was reasonable and supported by substantial evidence. ***See Pilieri, supra***.

Based upon the foregoing, we conclude Appellant presented facts sufficient to overcome summary judgment at this juncture. We further conclude under these circumstances Aetna's decision to defer payment on the competing insurance claims did not violate ERISA. Accordingly, we affirm the Orphans' court decree to the extent it denied Appellant's cross-claim against Aetna. We reverse that part of the decree which granted summary judgment in favor of the Gallagher Appellees and awarded the benefits of Decedent's life insurance policies under the Plan to Appellees Joann Gallagher and Michael Gallagher, Sr. and remand for further proceedings.

Decree affirmed in part and reversed in part; case remanded for further proceedings. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/23/2015